Eckstein, Respondent, vs. Northwestern Mutual Life Insurance Company, Appellant.

*October 11—November 9, 1937.*

For the appellant there was a brief by *Sam T. Swansen,* general counsel, and *Norman L. Baker,* assistant counsel, both of Milwaukee, and oral argument by *Mr. Baker.*

*Arthur Breslauer* of Milwaukee, for the respondent.

MARTIN, J. The sole issue made by the pleadings prior to the amendment of the complaint was whether it was the duty of the defendant to apply the dividend accumulations in its hands, in purchasing extended term insurance under the non-forfeiture provisions, so as to keep the policy in force. Provision 12-c of the policy reads as follows:

"Upon default in payment of premium, unless paid within the grace period, the amount of this policy and any existing dividend additions, less any indebtedness to the company on account hereof, shall be extended automatically as nonparticipating term insurance for such time from the date of default as the then cash surrender value will provide at the net single premium rate for the attained age of the insured according to the American Experience Table of Mortality with interest at three per cent."

Provision No. 9 of the policy reads:

"This policy shall participate in the surplus of the company while in force except under the extended term-insurance provision and the company will annually determine and account for the divisible surplus accruing hereon until all such surplus found to have arisen from this policy shall have been returned. Any such dividend of surplus may at the option of the insured: (a) Be withdrawn in cash; or (b) be applied toward the payment of premium hereon; or (c) be applied to the purchase of a nonforfeitable participating paid-up addition to this policy; or (d) be left to accumulate, subject to withdrawal, at such a rate of interest not less than three per cent, credited annually, as may be determined by the company. Unless the insured shall otherwise elect in writing dividends will be paid in cash."

The policy provided that the premium be paid quarterly in the sum of $16.80, on the 18th day of March, June, September, and December in every year during the lifetime of the insured. The insured had the option to change the manner of payment of premiums, and in September, 1923, payments were changed from quarterly instalments to semiannual instalments. At the close of the first policy year, the insured,

under provision No. 9-(c) of the policy, elected that dividends should "be applied to the purchase of a nonforfeitable participating paid-up addition to this policy." In March, 1925, insured elected to withdraw the dividend each year in cash in accordance with option (a), and in 1931, the insured elected that dividends accruing on the policy be left to accumulate subject to withdrawal in accordance with option (d). When the change was made in 1931, the dividend then left to accumulate, with interest, amounted to $29.26. It appears to have been the practice of the defendant insurance company to issue and attach to the notice of premiums to become due, statements of the amount of the dividend added to the accumulations and the amount of the accumulations at each anniversary of the policy, unless the policy had gone out of force.

It appears that the insured secured policy loans upon his policy, first in 1926 and again in 1932, the last loan being made on June 2, 1932, in the sum of $641. In connection with this loan and on May 17, 1932, the insured wrote the defendant:

"Re Policy No. 1258609—Charles Eckstein.
"Will you kindly advise what the cash surrender value of the above-mentioned policy would be and oblige."

To this inquiry, Mr. Evans, the vice-president and actuary, replied under date of May 20, 1932, advising insured of the status of the policy, and that "the cash value would be $655.59 less the loan and interest leaving a net cash value of approximately $386. In event of surrender there would also become payable the 1931 and 1932 dividends which have been left with the company to accumulate and which with accrued interest to date amount to $61.08."

The insured replied under date of May 23, 1932, as follows:

"Your letter of May 20th relative to surrender above numbered policy.

"I would prefer to take a loan against this policy and would request that you fill out the necessary papers for as large a loan as this policy will take."

When this loan was completed on June 2, 1932, the proceeds of the loan after payment of the prior loan, and accumulated interest thereon, left $373.11 available to the insured. This loan was $12.89 less than the estimated cash surrender value of the insured's policy. The insured failed to pay the semiannual premium due on September 18, 1933, at the time it was due or within the grace period extended by the moratorium law to sixty days. Because of this default, the policy automatically became extended term insurance under the nonforfeiture provision of the policy, 12-c, which is quoted above. When this default occurred, under the policy provision 12-c, only the then cash surrender value of the policy with its existing dividend additions was available for the purchase of extended term insurance. It appears that the defendant's actuarial department determined that the cash surrender value available extended the insurance as term insurance to February 1, 1934. The correctness of this computation appears to be conceded. Under date of January 24, 1934, Mr. Evans wrote the insured as follows:

MILWAUKEE, WIS., January 24, 1934.
1258609

Mr. C. H. Eckstein,
1947 N. Farwell Ave.,
Milwaukee, Wisconsin.

Dear Sir: In consequence of nonpayment of premium due on above numbered policy, the following indebtedness was satisfied as provided in the contract,

| Policy loan | $691.28 |
| Premium loan | $ |

and there remained in force temporary insurance (term extension) of $2,021 expiring on February 1, 1934.

The policy is inclosed. This letter shows the changed condition and expiration date of the insurance under the policy and should be filed therewith.

If you wish to apply for reinstatement of the policy, please notify the General Agent or the Home Office.

Very truly yours,<br>
PERCY H. EVANS,<br>
Vice-President and Actuary.

Copy to
Mr. V. M. Stamm,
General Agent,
Milwaukee, Wis.

The insured had on three former occasions, in 1922, 1930, and again in March, 1933, let his policy lapse for the non-payment of premiums, and on each occasion he took the necessary steps to have the policy reinstated. In connection with the lapse of the policy on March 18, 1933, it appears that on May 25, 1933, the defendant company's general agent, Mr. V. M. Stamm, sent the company's form letter to the insured, calling his attention to the fact that because of nonpayment of the premium due March 18, 1933, his policy was in a lapsed condition. The letter suggested the importance of maintaining the insurance, and that the policy be reinstated. Mr. Stamm inclosed a blank personal health certificate for use of the insured in the event he wished to reinstate the policy. In response to this letter, and on June 7, 1933, the insured wrote to Mr. Stamm as follows:

"Referring to the attached papers.
"Is there not enough accumulation to take care of this policy premium?"

In response to this letter, the insured was advised that the total accumulations on the policy at that time amounted to $92.41. He was further advised and was furnished the necessary form blank that he might use for a withdrawal of the dividend accumulations in the sum of $33.70, to pay the premium in default since March 18th. After the insured reinstated his policy in June, 1933, he knew that there was a balance of $58.71 of dividend accumulations, plus a small item of accrued interest, which sum, with accrued interest,

he could have used in payment of the premium due on Sep-
tember 18, 1933, or thereafter, to reinstate his policy follow-
ing the September 18th default in the payment of premium.
The balance of the dividend accumulations, with accrued
interest, at the time of insured's death amounted to $61.87.

The respondent contends, first, that under the terms of the
policy of insurance there is nothing restricting the use of
accumulations, in the event of default, in order to prevent a
forfeiture. There is no ambiguity as to any language in any
part of the policy. As to paragraph 9-(d), the respondent's
brief states:

"It is true that paragraph 9-(d) states that the accumula-
tions are 'subject to withdrawal,' but what does 'subject to
withdrawal' mean? Subject to be withdrawn by whom? It
does not say that they cannot be withdrawn by the company.
Nor does it say they can be withdrawn by the assured.
While, inferentially, they can be withdrawn by the assured,
does it mean that the company can *at no time* withdraw the
same? Does it mean that the company cannot, under any
circumstances, make these funds available in order to avoid
a forfeiture?"

Obviously, paragraph 9, quoted in full in the forepart of
this opinion, refers to the rights and options given to the
insured. The last sentence of the paragraph provides:

". . . Unless the insured shall otherwise elect in writing
dividends will be paid in cash."

The insured had no difficulty in interpreting his rights
under paragraph 9, during the life of the policy. He exer-
cised at some time all of the options which were given him,
the last option exercised being that provided in subdivision
(d), which provides:

". . . Any such dividend of surplus may *at the option of
the insured:* . . . (d) Be left to accumulate, subject to with-
drawal at such a rate of interest not less than three per cent,
credited annually, as may be determined by the company.
. . ."

On this branch of the case, we are dealing with a plain contract by the terms of which the rights of the contracting parties are fixed. The defendant contends that it had neither the power nor the duty to use the dividend accumulations in the payment of premiums or in the purchase of extended term insurance. It is clear that, under the terms of the policy, the defendant had no right to use or apply the dividend accumulations in payment of premiums or in the purchase of extended term insurance without express direction of the insured. Had defendant, of its own accord, done either, it would have remained liable to pay the accumulations, with interest, upon demand of the insured. In *Williams v. Union Central Life Ins. Co.* 291 U. S. 170, 180, 54 Sup. Ct. 348, 352, the court held: "The company had no right, without agreement with the insured, to apply a dividend, payable in cash, to the reduction of the advance against the policy." This case was an action brought by petitioner as beneficiary of a policy of insurance for $10,000, issued July 26, 1927, upon the life of her husband, who died on October 15, 1931. The premium of $449.10 was payable annually on June 10th, and was paid to and including June 10, 1930. The premium due on that date was not paid, nor within the thirty-one days of grace allowed by the policy. The "loan value" or "cash value" of the policy was then $910. Loans against the policy, with interest, amounted to $898.88. The policy was a participating one, and a dividend of $74.80 was declared in favor of the insured on June 10, 1931. If that dividend had been applied in reduction of the amount advanced against the policy, or to the purchase of extended insurance, the result would have been to extend the insurance beyond the date of the death of the insured. The petitioner contended that the dividend should have been so applied. The insurance company contended that such application would have been contrary to the terms of the policy, and that on expiration of the period of grace, without

payment of the premium due, the policy lapsed and the dividend was payable *in cash and not otherwise.* That is precisely the question in the case at bar. In the *Williams Case, supra,* at page 179, the court said:

"If, after the lapse and during the life of the insured, the company had attempted to apply that dividend to extended insurance, its action would not have been binding upon the insured and he would have been entitled to demand the cash payment explicitly promised him."

*Baker v. General American Life Ins. Co.* (Iowa, 1936) 268 N. W. 556; *Elton v. Northwestern Nat. Life Ins. Co.* (1934) 192 Minn. 116, 255 N. W. 857; *Gardner v. National Life Ins. Co.* 201 N. C. 716, 161 S. E. 308; *Harden v. Occidental Life Ins. Co.* 206 N. C. 230, 173 S. E. 617; *Thomas v. New York Life Ins. Co.* (C. C. A. 6th Cir.) 81 Fed. (2d) 614; *Manufacturers' Trust Co. v. Equitable Life Assur. Soc.* 244 App. Div. 357, 279 N. Y. Supp. 457; *Smith-Lee Co. Inc., v. John Hancock Mut. Life Ins. Co.* 249 App. Div. 919, 292 N. Y. Supp. 840; *Toncich v. Home Life Ins. Co.* 309 Pa. 336, 163 Atl. 673.

The respondent, in support of his contention that the defendant should have used the dividend accumulations in its hands in purchasing extended term insurance, after default, cites, among other cases, *Rasmusen v. New York Life Ins. Co.* 91 Wis. 81, 64 N. W. 301; *Leonard v. Prudential Ins. Co.* 128 Wis. 348, 107 N. W. 646; *McNaughton v. Des Moines Life Ins. Co.* 140 Wis. 214, 122 N. W. 764. The facts in these cases are clearly distinguishable from the facts in the instant case.

Respondent's second contention relates to his plea of estoppel. The facts alleged in that regard are:

". . . That the defendant, by failing to send the accumulations to the insured, by failing to give him notice thereof after the lapse of his policy, and by leading the insured to believe his dividend accumulations had been exhausted, so

that it would be futile for him to attempt to withdraw the same, the defendant is therefore estopped from asserting forfeiture of the policy. . . ."

We must approach a consideration of the facts alleged to constitute an estoppel; that the proof thereof must be clear, satisfactory, and convincing, and not rest upon mere inference. *Crane v. Esmond,* 214 Wis. 571, 579, 253 N. W. 780. As one of the elements of the alleged estoppel, respondent claims that "assured not being advised of his accumulations, believed they were used up and failed to apply for reinstatement." This assertion appears contrary to the undisputed evidence. In June, 1933, when the insured was taking steps to have his policy reinstated following the lapse occasioned by his default in payment of the premium due March 18, 1933, he made specific inquiry whether the accumulations on his policy were sufficient to take care of the March premium then in default. He was thereupon informed that at that time the total accumulations on the policy amounted to $92.41, and he was furnished a form blank that he might use in making a partial withdrawal of the dividend accumulations in the sum of $33.70, which amount he did apply in payment of the March premium. He then knew that he had left the difference, or the sum of $58.71, in the hands of the defendant to accumulate at not less than three per cent interest under subdivision (d) of provision No. 9, of his policy. This amount was thereafter subject to his withdrawal at will. He is presumed to know, and in fact did know, that the balance of the dividend accumulations could only be withdrawn by himself or upon his express authority. The history of this policy, the policy loans made upon it by the insured, his exercise at different times of all the options provided for in the policy, his having the policy reinstated when it lapsed on former occasions because of the nonpayment of premiums, his application for a partial withdrawal from the accumulated dividend fund in June, 1933, to pay the March pre-

mium, is persuasive evidence of his knowledge as to the status of the policy until its final termination resulting from the nonpayment of the September, 1933, premium. He was advised by letter in January, 1934, that in consequence of the nonpayment of the September, 1933, premium, his policy loan, which at that time with accrued interest amounted to $691.21, had been satisfied as provided in the contract, and that there remained in force temporary insurance (term extension of $2,021) expiring on February 1, 1934. The letter concluded:

"If you wish to apply for reinstatement of the policy, please notify the General Agent or the Home Office."

The insured knew that he had to take the initiative to have the policy reinstated. He also knew that, under the terms of the policy, the defendant could not apply any part of the accumulated dividend fund in payment of the defaulted premium or for term extension insurance.

There is no evidence of any misrepresentation having been made by the defendant to the insured concerning the status of his policy or the accumulated dividend fund. The insured is presumed to know the terms of his policy. We cannot now indulge in any speculation that he may have believed the balance of the dividend accumulations were applied in computing the extended term insurance to February 1, 1934. He knew that the dividend accumulations could not be used for that purpose. There is no alleged concealment or misconduct on the part of the defendant, and we can find no basis in the evidence to sustain a plea of an estoppel.

"Mere possibilities leave the solution of an issue of fact in the field of conjecture and speculation to such an extent as to afford no basis for inferences to a reasonable certainty, and in the absence of at least such inferences there is no sufficient basis for a finding of fact. It will not do to reach a conclusion in favor of the party on whom the burden of proof rests by merely theorizing and conjecturing. There must at least be sufficient evidence to remove the question

from the realm of conjecture." *Creamery Package Mfg. Co. v. Industrial Comm.* 211 Wis. 326, 330, 248 N. W. 140.

The defendant's motion for a directed verdict should have been granted.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in favor of the defendant dismissing the action.