[Civ. No. 14561. Second Dist., Div. Three. Feb. 1, 1945.]

GRACE H. BAKER, Respondent, v. THE NORTHWEST-ERN MUTUAL LIFE INSURANCE COMPANY (a Corporation), Appellant.

Hurt & Hurt for Appellant.

Arthur G. Baker and A. F. Mack, Jr., for Respondent.

FOX, J. pro tem.—This is an appeal by the defendant from a judgment in favor of the plaintiff who was the sole beneficiary under a policy of life insurance issued by defendant on the life of Garrett O. Wigell. The action was defended upon the ground that the policy lapsed prior to the death of the insured and this is the sole issue in the case. The exact

question is whether there were sums in defendant's hands which it should have so applied as to leave available a sufficient amount to pay the quarterly premium which fell due June 30, 1933.

The policy was issued on March 31, 1920. It was originally written on an annual premium basis, said premiums to be paid in every year during the lifetime of the insured. It provided that annual dividends should be paid or applied as directed by the insured. The insured paid premiums on an annual basis until March, 1924. Premium payments, however, were changed to a quarterly basis commencing with the premium due on the 31st of March of that year. Thereafter all quarterly premiums were paid to and including the one due on March 31, 1933. Pursuant to written request of the insured, the Automatic Premium Loan Provision of the policy was put into effect January 22, 1931. That provision (10b) reads as follows: "Upon request of the Insured, and Assigns if any, made prior to default in premium payment and remaining unrevoked, the premiums thereafter falling due and not paid will be charged as a premium loan with interest at the rate of six per cent per annum, provided the then cash surrender value be sufficient to cover such loan. Any premium loan may be repaid at any time." Various premium loans were thereafter made by the defendant. The insured also obtained certain policy loans (cash loans) from the company.

On June 30, 1933, the cash surrender value of the policy was insufficient to pay the quarterly premium then due, after deducting the amount of the policy loans and premium loans together with the interest thereon as computed by the company. It thereupon applied a portion of the cash surrender value to payment of the said obligations and the balance to the purchase of term extension insurance, which term expired February 20, 1934. The insured was notified of this action by letter dated September 21, 1933. He was advised to notify the general agent or the home office if he desired to apply for reinstatement of the policy. He made no such request. He died on June 1, 1937.

Cash dividends were apportioned to the policy annually on its anniversary date, March 31st. The dividend provision of the policy and the options given the insured with respect to dividends is as follows: "This Policy while in force except under the extended term insurance provision shall par-

ticipate in the surplus of the Company. The Company will annually. determine and account for the divisible surplus accruing hereon until all such surplus found to have arisen from this Policy shall have been returned. Any such dividend of. surplus may at the option of the Insured: (a) be withdrawn in cash; or (b) be applied towards the payment of premium hereon.; or (c) be applied to the purchase of a participating paid-up addition to this Policy; or (d) be left to accumulate, subject to withdrawal, at such a rate of interest not less than three per cent., credited annually, as may be determined by the Company. Unless the. Insured shall otherwise elect in writing dividends will be paid in cash.'' In the application signed. by the insured, a copy of which was attached to the policy, it was provided that ''Cash dividends, until otherwise directed. shall be (1). Applied toward reduction of premium.'' From 1925 to 1930, inclusive, there remained a small balance of each of said six dividends after paying therefrom the quarterly premiums due on March 31st —the date the respective dividends were payable. The company held each of such balances for three months in a suspense account, without interest, until June 30th of each year, when the next quarterly premium became due, and then applied each such balance in part payment of the quarterly premium due at that time.

Plaintiff contends that the company should have applied these balances (the excess of the annual dividend over the quarterly premium) in reduction of the indebtedness of the insured to the company, thus reducing the interest accumulation on said indebtedness. The effect of this proposition may be stated another way, viz., that the company should have allowed the insured interest at 6 per cent on these balances from March 31st until it was necessary to apply the same on the next quarterly premium which fell due on June 30th. If this had been done the amount on hand would have been sufficient to pay the premium in question. The company, however, contends that it had no authority to apply said balances on the insured's indebtedness to it and that it was not obligated to pay interest on said balances but merely to hold them for the benefit of the insured until such time as they were. applied on the next quarterly premium. In our opinion the position of the company must be sustained.

The law seems to be clear to the effect that dividends must be paid or applied by an insurance company in accord-

ance with the terms of the contract with the insured. (*Eckstein* v. *Northwestern Mut. Life Ins. Co.* (1937), 226 Wis. 60 [275 N.W. 916]; *Williams* v. *Union Central Life Ins. Co.* (1934), 291 U.S. 170 [54 S.Ct. 348, 78 L.Ed. 711, 92 A.L.R. 693]; *Meilander* v. *Penn. Mut. Life Ins. Co.* (1938), 59 Ohio App. 171 [17 N.E.2d 398]; *Gardner* v. *Natl. Life Ins. Co.* (1931), 201 N.C. 716 [161 S.E. 308].) Under the provision of the policy herein quoted, the insured had four options with respect to dividends. He had elected when he made application for the policy to have the annual dividend applied toward the payment or reduction of the premium. This unrevoked direction to the company by the insured was binding on it. The Eckstein case, *supra*, involved the question as to whether or not the company was bound to use dividends so as to prevent a forfeiture where the insured had given a specific direction as to their use. Charles Eckstein had obtained a policy of insurance from defendant for $2,500. The quarterly premium of $16.80 was payable on the 18th of March, June, September and December. In September, 1923, Eckstein changed premium payments to a semiannual basis. He also elected that dividends should be applied to purchase nonforfeitable participating paid-up additions to the policy. Thereafter, in March, 1925, he elected to take dividends in cash, and in 1931 he elected to leave dividends with defendant at interest, subject to withdrawal on demand. Eckstein obtained loans of $641 on the policy. He failed to pay the semiannual premium due September 18, 1933, on time or within the grace period. Defendant sent notice of lapse and amount of term paid-up insurance in force under the policy provisions and suggested the possibility of reinstatement. The insured knew there was a balance of $58.75 of dividend accumulations, plus a small item of accrued interest. This amount was more than sufficient to have paid the semiannual premium due in September. The insured, however, gave no direction for such use of dividend accumulations and the company therefore did not so apply the said accumulation. The plaintiff contended that the company should have so used the dividend accumulation as to prevent a forfeiture of the policy. In holding against the plaintiff's contention the court had this to say (p. 920 [275 N.W.]): On this branch of the case, we are dealing with a plain contract by the terms of which the rights of the contracting parties are fixed. The defendant contends that it had neither the power nor the duty to use the

dividend accumulations in the payment of premiums or in the purchase of extended term insurance. It is clear that, under the terms of the policy, the defendant had no right to use or apply the dividend accumulations in payment of premiums or in the purchase of extended term insurance without express direction of the insured. Had defendant, of its own accord, done either, it would have remained liable to pay the accumulations, with interest, upon demand of the insured.''

Incidentally, the defendant in the Eckstein case is the same company that is defendant in this case and the policy gave the insured the identical options with respect to dividends as those quoted herein.

In the Gardner case, *supra*, the insured in his application had directed that dividends should be left ''with the company at interest unless otherwise directed.'' No other direction was given by him. On May 11, 1930, a semiannual premium became due. It was not paid and the policy lapsed. On that same date a dividend of $25.30 was declared on the policy. This sum was retained by the company, at interest, in accordance with the election of the insured. The insured died on August 24, 1930. If this dividend had been applied by the defendant to the purchase of term insurance, the policy would have been extended beyond the date of the death of the insured, and would have been in force on said date. The plaintiff contended that the company should have done this. In holding against plaintiff's contention, the court said: ''If in violation of the contract with the insured, with respect to this dividend, the defendant had so applied it, it would nevertheless have been liable to the insured for the amount of the dividend, with interest, when called upon by him for its payment. There is no principle of law or equity upon which the defendant can be held liable to the plaintiff because after the death of the insured within the time for which the policy would have been extended, if the insured had directed that the dividend be applied to the purchase of extended insurance, it appeared that such application would have been to the interest of the plaintiff or the beneficiary in the policy.''

The court in the Eckstein case relied upon the Williams case, *supra*. There the defendant issued a policy of life insurance on the life of plaintiff's husband for $10,000, dated July 26, 1927. A premium of $449.10 was payable annually on June 10 of each year and was paid to and including June 10, 1930. The premium due June 10, 1931, was not paid when

due and was not paid during the grace period. The reserve or loan value of the policy was than $910. Loans on the policy with interest thereon amounted to $898.88, leaving a net or surrender value of the policy in the sum of $11.12. The policy was a participating one and a dividend of $74.80 was declared in favor of the insured on June 10, 1931. The policy contained four options as to the disposition of dividends, but insured had not exercised any of them. The policy did, however, contain provision for automatic disposition of dividends if no other option had been elected, among them the following: "or if the policy shall lapse, the dividend then due shall be paid in cash."

If the dividend had been applied in reduction of the amount advanced against the policy and the balance then applied to the purchase of extended term insurance, the policy would have remained in effect beyond the date of the death of the insured, on October 15, 1931. On this point Mr. Chief Justice Hughes, speaking for the court, said: "It is the contention of the petitioner that, on the lapse of the policy, the dividend of $74.80 should have been applied in reduction of the amount advanced against the surrender value of the policy, thus raising what remained of that value from $11.12 to $85.92, a sum sufficient to extend the insurance until after the death. But the policy gave no warrant for an application of the dividend to the reduction of advances against the policy. As this Court pointed out in *Board of Assessors* v. *New York L. Ins. Co.*, 216 U.S. 517, 522, 54 L.ed. 597, 601, 30 S.Ct. 385, such advances being against the surrender value do not create a 'personal liability' or 'debt' of the Insured, but are merely a deduction from the sum that the company 'ultimately must pay.' While the advance is called a 'loan' and interest is computed in settling the account, 'the item never could be sued for' and in substance 'is a payment, not a loan.' *The company had no right, without agreement with the Insured, to apply a dividend, payable in cash, to the reduction of the advance against the policy.*" (Italics added.)

Under these principles, where the provisions of the policy are clear as they are in this case, the company had no authority or right to apply the surplus dividend toward the partial satisfaction of the loans against the policy in view of the specific direction of the insured as to the use that should be made of said dividends. For us to hold otherwise would be to make a new contract for the parties.

There was no obligation on the part of the company to pay

interest on these dividend balances until they might be applied on the next quarterly premium. These amounts were not loans, for "A loan of money is a contract by which one delivers a sum of money to another, and the latter agrees to return at a future time a sum equivalent to that which he borrowed" (Civ. Code, § 1912). Hence interest could not be charged upon any loan theory. Nor is there any implication in the options (or elsewhere in the policy) with respect to the use or disposition of dividends which would indicate that the company should pay interest on dividend balances where the insured had directed that "Cash dividends, until otherwise directed shall be (1) Applied towards reduction of premium." If it had been intended that interest should be paid on dividends then the insured should have exercised option (d) which provides that dividends "(d) be left to accumulate, subject to withdrawal, *at such a rate of interest* not less than three per cent., credited annually, as may be determined by the Company." (Italics added.) Of the four options given the insured with respect to the use or application of dividends this is the only one where interest is mentioned.

The dividends by direction of the insured were to be used by the company for a particular purpose. It carried out this direction promptly in March and June of the years 1925-1930, inclusive, and in our opinion was not obligated either expressly or impliedly to pay interest on these dividend balances.

■ It must now be determined whether or not, excluding interest credit on the aforesaid dividend balances, the quarterly premium of $63.40 due on June 30, 1933, could have been paid by an automatic premium loan within the terms of the contract. If the cash surrender value of the policy exceeded the amount of the premium loans and the cash loans by a sum sufficient to pay that premium the company should have so applied it and the premium would have been thereby paid. It is plaintiff's contention that the amount was sufficient. It was stipulated that the policy had a cash surrender value of $1,800.90 on June 30, 1933. The parties disagree as to the total of the sums chargeable against the cash surrender value, and, therefore, as to the amount of the excess of the cash surrender value above these total charges that was applicable to payment of the quarterly premium that fell due on that date. In the computation that follows we have taken as the basis for our calculations plaintiff's figures and not those of defendant. Plaintiff's exhibits, however, do not disclose di-

rectly the specific amount of indebtedness which she claims was chargeable against the policy on June 30, 1933. Since that is the controlling date plaintiff's figures must be adjusted to it. It does appear, however, from plaintiff's Exhibit 2 that the balance due on account of premium loans on March 31, 1933, was ....................................$131.48

Interest on this sum for three months (from March 31, 1933, to June 30, 1933) at six per cent is............ 1.97

The unpaid balance then on premium loans on June 30, 1933, was .........·.............................$133.45

This exhibit also shows that the "Net Cash loan indebtedness" (which is distinct from the indebtedness for premium loans) against said policy on September 30, 1933, was $1,628.11. Interest at six per cent per annum accumulates at the rate of 1.5 per cent quarterly. By dividing $1,628.11 by 1.015 the amount of indebtedness on policy loans on June 30, 1933, is found to have been $1,604.05. In arriving at the "net cash loan indebtedness" on September 30, 1933, plaintiff credited thereon six items of interest totaling $4.08. These six interest items which plaintiff claims credit for represent interest at six per cent upon the aforesaid dividend balances (that is to say, the balances that remained after payment of the current quarterly premium and which were held by the company for application upon the next quarterly premium), for a period of four months (i.e., for the quarter immediately following the declaration of dividends on March 31st of each year for the years 1925 to 1930, inclusive, plus the 31 days grace period for payment of premiums) and, in addition, interest on these six interest items until September 30, 1933. Plaintiff's proposition works out in this way, as revealed by her Exhibit No. 2. On March 31, 1925, there was a dividend balance of $13.90 after paying the quarterly premium then due. Interest on this amount at 6 per cent for 4 months (i.e., from March 31, 1925, to July 31, 1925, when it was applied on the June 30, 1925, premium) is $.28. This item of $.28 at 6 per cent compound interest amounts to $.45 on September 30, 1933, according to her computations. By like process, plaintiff figures the interest on the dividend balance for 1926 to be $.46 which, at compound interest, amounts to $.70 by September 30, 1933. In like manner she figures the interest on the dividend balance for 1927 to be $.49, which accumulates to $.70; the interest on the dividend balance for 1928 to be

$.51, which accumulates to $.69; the interest on the dividend balance for 1929 to be $.60, which accumulates to $.77, and the interest on the 1930 dividend balance to be $.64, which accumulates to $.77. The total of these accumulated amounts is $4.08. Since, however, this total of $4.08 represents accumulations to September 30, 1933, it must also be adjusted to the controlling date of June 30, 1933. This results in an adjusted figure of $4.02. Since under the principles herein set forth plaintiff was not entitled to claim interest on the said dividend balances she was therefore not entitled to take credit for said interest item. In order, therefore, to find the "net cash loan indebtedness" against the policy on *June 30, 1933,* we must add $4.02 to plaintiff's previously adjusted cash loan figure of $1,604.05 making a cash loan indebtedness on said date of ..........................................$1,608.07

To this must be added the premium loan indebtedness on said date of............................... 133.45

Total indebtedness as of June 30, 1933.............$1,741.52
The cash surrender value of the policy on June 30, 1933, was .................................... 1,800.90

Balance of cash surrender value available to pay premium due June 30, 1933......................$ 59.38

This amount was insufficient to pay the quarterly premium of $63.40 due on said date and the policy, therefore, lapsed. The policy not having been reinstated and the term insurance having expired prior to the death of the insured the plaintiff is not entitled to recover on the policy.

The views herein expressed make it unnecessary to consider other questions discussed by counsel.

The judgment is reversed.

Desmond, P. J., and Shinn, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied March 30, 1945. Carter, J., voted for a hearing. Shenk, J., and Schauer, J., disqualified. Nourse, J. pro tem., and Peters, J. pro tem., participated.