HUFSTEDLER, J.
 

 Plaintiff, Lorene Gaunt, appeals from the adverse portions of a judgment for defendant, The Prudential Insurance Company of America (“Prudential”), in an action brought to recover the proceeds of a policy of insurance upon the life of Daniel Gaunt, the deceased husband of the plaintiff.
 

 On appeal Mrs. Gaunt contends: (1) The evidence was insufficient to support the trial court’s finding that Prudential did not waive the late payment of premiums, (2) the evidence was insufficient to support the finding that Prudential was not estopped to assert lapse of the policy for nonpayment of premiums, and (3) as a matter of law Prudential could not declare a forfeiture of the policy for nonpayment of premiums when it held dividends accumulated in favor of the decedent in an amount in excess of the unpaid premiums.
 

 Summary of the Evidence
 

 The evidence, viewed most favorably to Prudential, as it must be on appeal, reveals the following facts: Mr. and Mrs. Gaunt took out separate life insurance policies with Prudential. Mr. Gaunt applied for his insurance in November 1957 and on January 20, 1958, Prudential issued to Mr. Gaunt a “modified whole life policy” in the face amount of $8,315, naming Mrs. Gaunt as beneficiary. Premiums on Mr. Gaunt’s policy were due on the 20th,of each month, initially in the sum of $28.27 and later in the sum of $32.01. Premiums in the amount of $15.86 were due on Mrs. Gaunt’s policy on the 11th of each month. The Gaunts customarily issued one check to pay the premiums on both policies.
 

 Mr. Gaunt was injured in September of 1962 and entered the hospital for surgery to remove a blood clot in his brain. Following the surgery he returned home in early October. He recuperated sufficiently to return to work in November although he continued to receive medical treatment. He collapsed on the street on December 8, 1962, and was taken to a hospital, where he died the following day.
 

 Mr. Gaunt’s policy contained clauses regulating the payment of premiums and reinstatement of a lapsed policy, including the following: “A grace period of 31 days will be allowed for payment of a premium in default, during which period the policy will continue in force. ... If a premium remains unpaid at the end of the grace period, the policy shall
 
 *17
 
 thereupon terminate and be without further value except as may be provided under the ‘Non-forfeiture Provisions.'
 

 “Reinstatement.—If not surrendered to the company, this policy may be reinstated within 3 years after default in premium payment upon the following conditions: (1) production of evidence of insurability satisfactory to the company; (2) payment of all arrears of premiums with compound interest at 5% per annum; and (3) payment or reinstatement of any indebtedness on or secured by the policy with compound interest at 5% per annum. ...”
 

 Mis. Gaunt mailed a check to Prudential on November 22, 1962, in an amount sufficient to pay the premiums on both policies. She received a letter from Prudential as to each policy which stated that the November payment had been received, but it could not be credited to the policy because the policy had lapsed for failure to pay the monthly premium due in October within the 31-day grace period following its due date. Two reinstatement forms were sent with the letter, one for each policy. Mrs. Gaunt filled in the reinstatement form for her policy, but the reinstatement form for Mr. Gaunt’s policy was not filled out. On December 1, 1962, Mrs. Gaunt mailed to Prudential her completed form and his uncompleted form, together with a check in an amount sufficient to pay one month's premiums on both policies. Mrs. Gaunt testified that Mr. Gaunt’s reinstatement form was not filled out because she did not think that his premium was in default. Her conclusion was based on her having written checks in September, October and November to pay the premiums on both policies, and upon the fact that her premium was due nine days earlier than Mr. Gaunt’s. She was unaware that there was an error in the Gaunts’ records, which showed as paid, premiums due on both policies several months earlier which were not in fact paid. The check Mrs. Gaunt wrote in September paid the August premiums and the one in October paid the September premiums. The November check would have paid the October premiums, but it was mailed at least two days after the expiration of the 31-day grace period on Mr. Gaunt’s policy.
 

 When the check mailed by Mrs. Gaunt on November 22, 1962, was received by Prudential, the premium payments were posted as “suspense account” entries because the checks were postmarked after the expiration of the 31-day grace period instead of as “renewal” entries, in which accounts premiums were credited that were received prior to the due date or within the 31-day grace period. On December 4, 1962, upon
 
 *18
 
 receipt of Mrs. Gaunt’s check and the completed and uncompleted reinstatement forms, Mrs. Gaunt’s payment from November was transferred to her renewal card and her December payment was likewise posted to her renewal card. The procedure followed with respect to Mrs. Gaunt’s policy was the usual practice observed upon reinstatement of a policy. The posting clerk did not notice that Mr. Gaunt’s reinstatement form had not been filled in. She made a transfer and an entry similar to that described concerning Mrs. Gaunt’s account in Mr. Gaunt’s records. After the posting was done, she saw that Mr. Gaunt’s form was incomplete and received instructions from her superior to remove the entries from Mr. Gaunt’s records and to re-post both the November and December sums, totaling $64.02, to Mr. Gaunt’s suspense account.
 

 On December 10, 1962, Prudential was notified by telephone that Mr. Gaunt had died. Mr. Sherman, a representative of Prudential, telephoned Mrs. Gaunt for an appointment to secure a death certificate and to complete a claim form. Mr. Sherman met with Mrs. Gaunt and told her that the records of the company indicated that Mr. Gaunt’s policy had lapsed, but that it was the usual procedure to complete the claim form for the face amount of the policy and that the entire matter would be reviewed by the company.
 

 In early January of 1963 the company acknowledged liability under the policy for “reduced paid-up insurance” in accordance with a provision of an endorsement to the policy which states: “ (b) If there is default in payment of premium after the policy has a tabular cash value and such premium remains unpaid at the end of the grace period, and if the ‘Cash Value Option’ is not elected as provided in the policy, then the ‘Reduced Paid-Up Insurance Option’ shall, without being evidenced by endorsement of the policy, automatically become effective as of the due date of the premium in default.” Prudential tendered to Mrs. Gaunt $1,119 in payment of the reduced paid-up insurance and $64.02, the sum it had retained in Mr. Gaunt’s suspense account. Prudential otherwise denied liability. Mrs. Gaunt refused the tender and brought this action.
 

 Evidence Sufficient to Support Findings
 

 The task of the appellate court is not to decide whether the evidence would have been sufficient to support findings in favor of Mrs. Gaunt on the issues of waiver and estoppel had they been made, but. solely to determine whether there is any
 
 *19
 
 substantial evidence to support the findings which were made against Mrs. Gaunt on these issues. It is fundamental that the burden of proving estoppel or waiver rests upon the party in whose favor those doctrines are claimed to inure.
 
 (General Motors Accept. Corp.
 
 v.
 
 Gandy
 
 (1927) 200 Cal. 284, 295 [253 P. 137] ;
 
 Transport Clearings-Bay Area
 
 v.
 
 Simmonds
 
 (1964) 226 Cal.App.2d 405, 427-428 [38 Cal.Rptr. 136] ;
 
 Jones
 
 v.
 
 Sunset Oil Co.
 
 (1953) 118 Cal.App.2d 668, 673-674 [258 P.2d 510].) The trial court’s findings adverse to Mrs. Gaunt’s claim of waiver and estoppel must stand unless it can be said from the uncontradicted evidence that estoppel or waiver appears as a matter of law.
 

 A waiver is the relinquishment of a known right. 1 ‘ A waiver may occur (1) by an intentional relinquishment or (2) as 1 the result of an act which, according to its natural import, is so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished. ’
 
 (Rheem Mfg. Co.
 
 v.
 
 United States
 
 (1962) 57 Cal.2d 623, 626 [21 Cal.Rptr. 802, 371 P.2d 578].) ”
 
 Crest Catering Co.
 
 v.
 
 Superior Court
 
 (1965) 62 Cal.2d 274, 278 [42 Cal.Rptr. 110, 398 P.2d 150]. Four elements must ordinarily be proved to establish an equitable estoppel: (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.
 
 (E.g., Transport Clearings-Bay Area
 
 v.
 
 Simmonds, supra,
 
 226 Cal.App.2d 405, 427;
 
 Safway Steel Products, Inc.
 
 v.
 
 Lefever
 
 (1953) 117 Cal.App.2d 489, 491 [256 P.2d 32].)
 

 Mrs. Gaunt’s claim that Prudential either waived the late payment of the October premium on Mr. Gaunt’s policy or was estopped to assert forfeiture of the policy for nonpayment of that premium is based on Prudential’s cashing the November and December checks and retaining the proceeds thereof until after Mr. Gaunt died, on Prudential’s failure to tell her that she was mistaken in believing that the October premium on Mr. Gaunt’s policy was paid after Prudential had learned of her mistake, and on some irregularities within the Prudential office in the handling of Mr. Gaunt’s account.
 

 If all that had happened was that Prudential cashed the checks and retained the proceeds, a waiver of a late payment of the premium might well be implied, regardless of how
 
 *20
 
 Prudential handled its bookkeeping. But that was not all that happened. Prudential sent Mr. and Mrs. Gaunt a letter telling them that the payments could not be credited to the policies because they had lapsed and enclosed the forms for reinstatement. Mrs. Gaunt was familiar with the reinstatement requirements before she received the December letter enclosing the forms. The Gaunt policies had been reinstated five times before December 1962. Under these circumstances a waiver cannot be implied. As the court said in
 
 California-Western States Life Ins. Co.
 
 v.
 
 Feinsten
 
 (1940) 15 Cal.2d 413, 421-422 [101 P.2d 696, 131 A.L.R. 608], in rejecting a similar argument, 11 [T]he fact that following lapse of the policy the insurer required the insured to execute an application for reinstatement would negative any asserted claim by the insured that the insurance company had waived its right to recognize the policy as having lapsed. ... It also appears that on December 27, 1935, the insurer again wrote to the insured stating that ... it had received from him the ‘Blue Note’ (in accordance with the plan of premium payment theretofore used by the parties), but advising the insured that since the grace period had expired on November 28, 1935, it would require him to sign ‘the attached health certificate’ (application for reinstatement). . . . [T]he insured was familiar with the procedure of the insurance company in the matter of requiring the filing of an application for reinstatement following lapse of the policy for nonpayment of premiums. The evidence does not show that the insurer misled the insured into believing it had waived the lapsing of the policy
 
 (McDanels
 
 v.
 
 General Ins. Co.,
 
 1 Cal.App.2d 454, 460 [35 P.2d 394, 36 P.2d 829]), nor that the company was lax in the matter of exercising its right to compel the insured to make an application for reinstatement.”
 

 Mrs. Gaunt argues that Prudential was nevertheless estopped to assert the lapse of Mr. Gaunt’s policy because Prudential did not reply to a notation which she had made on Mr. Gaunt’s reinstatment form stating that she had made the October and November payments on his policy and for that reason did not fill out the reinstatement form. The court was not obliged to accept her testimony that she made the described notation, particularly since Prudential’s posting clerk, who opened Mrs. Gaunt’s letter and examined the reinstatement forms, testified that she saw no such notation on the forms. Mr. Gaunt’s reinstatement form itself was not introduced into evidence. Conflicts in the evidence
 
 *21
 
 must be resolved on appeal in favor of the party prevailing in the trial court.
 

 It is true that there were some irregularities in the handling of Mr. Gaunt’s account within the Prudential office: the error in posting entries to Mr. Gaunt’s account to which we have previously adverted and the failure of the Prudential branch office to notify the home office about receipt of the unsigned reinstatement form. But Mrs. Gaunt did not establish that she relied upon any of the conduct of Prudential either in paying the premiums or in failing to complete the reinstatement form. The court could have concluded from the evidence that Mrs. Gaunt relied entirely upon the Gaunts' own erroneous records of payment in mistakenly assuming that the premiums were paid and not on any action or inaction by Prudential.
 
 [1]
 

 The conclusion follows that the findings of the trial court that Prudential was not equitably estopped to assert lapse of the policy and it did not waive lapse, based on nonpayment of the October premium, cannot be overturned on appeal.
 

 Application of Dividends to Avoid Forfeiture
 

 As of October 20, 1962, the sum of $100.46 in accrued dividends was due Mr. Gaunt. Mrs. Gaunt contends that those dividends should have been applied by Prudential to the unpaid October premium to prevent a forfeiture of the policy. Prudential replies that it had no such duty because Mr. Gaunt directed Prudential to accumulate dividends in the exercise of the fourth policy option and that even if that directive were ineffectual, the policy required Prudential to use the divi
 
 *22
 
 dends to purchase reduced paid-up insurance rather than to prevent forfeiture.
 

 In the absence of any specific provision in the policy directing the disposition of accumulated dividends or a binding direction by the insured with respect thereto, the weight of authority holds that an insurer cannot insist upon a forfeiture of a policy for nonpayment of a premium when it has in its possession sufficient dividends accumulated to the insured's account to cover the premium due.
 

 For example, in
 
 Mutual Life Ins. Co. of New York
 
 v.
 
 Breland
 
 (1918) 317 Miss. 479 [78 So. 362], an action to recover the proceeds of a life insurance policy, the complaint alleged that the insurer had in its possession accrued dividends credited to the insured's account which were adequate to pay a premium which otherwise was in default, causing the policy to lapse. The court noted that the insured was entitled to have the dividends used to pay the defaulted premium “unless they were disbursed or applied in accordance with one of the options given in the policy.” (78 So. at p. 364.) The insured had not elected any of the options. The insurance company had an option to apply dividends to purchase a reduced paid-up policy, which the court concluded did not become operative. The court said, “To apply the funds in accordance with the option given appellant [insurer] would mean a little additional insurance and a forfeiture of the main contract, and to apply the funds towards the liquidation of the past-due annual premium would mean the keeping alive of the main contract. The very object of the contract is to provide insurance for the full amount of $2,000, and here the company had in its power to apply the insured's money in a way to keep alive the main contract and in doing so to conserve ordinarily the best interests of both parties.” (78 So. at p. 364.) The court held that the insurer had a duty to apply the accumulated dividends to prevent the forfeiture of the policy. (Cases supporting the majority rule are collected in a Note, 8 A.L.R.2d 862, 868 et seq.)
 

 In California the only case in which the question was raised appears to be
 
 Straube
 
 v.
 
 Pacific Mut. Life. Ins. Co.
 
 (1899) 123 Cal. 677 [56 P. 546]. The plaintiff, beneficiary of a life insurance policy, filed a complaint seeking damages for alleged fraud in procuring the surrender of a lapsed policy for a cash consideration in an amount less than the worth of the policy. The court affirmed judgment in favor of the insurance company which had been entered after the insurance company’s
 
 *23
 
 demurrer to the complaint was sustained. The entire discussion of the point in which we are interested is this statement by the court: '1 There is no merit in appellant’s final contention to the effect that the accumulated dividends should have been applied to the payment of premiums upon the policy.” (123 Cal. at p. 681.) The statement is of little value as precedent, unsupported as it is by either analysis or authority, and enunciated before the turn of the century in a judicial climate that bears little resemblance to our own.
 
 [2]
 
 Par more persuasive than a nineteenth century judicial fiat are the many modem decisions establishing the policy of protecting the beneficiary from losing his insurance benefits if that result can be accomplished without doing violence to the terms of the contract the parties have made and without ignoring the unequivocal conduct of the parties.
 
 (E.g.,
 
 see
 
 Gray
 
 v.
 
 Zurich Ins. Co.
 
 (1966) 65 Cal.2d 263, 269-272 [54 Cal.Rptr. 104, 419 P.2d 168].) "Forfeitures, particiularly in insurance contracts, are not favored.
 
 (Bittinger
 
 v.
 
 New York Life Ins. Co.,
 
 17 Cal.2d 834 [112 P.2d 621].) And if reasonably possible in light of the circumstances, the court will determine that a forfeiture has not occurred or that a waiver or estoppel
 
 exists. (Knarston
 
 v.
 
 Manhattan Life Ins. Co.,
 
 124 Cal. 74 [56 P. 773];
 
 Huber
 
 v.
 
 New York Life Ins. Co.,
 
 18 Cal.App.2d 269 [63 P.2d 318]).”
 
 Page
 
 v.
 
 Washington Mut. Life Assn.
 
 (1942) 20 Cal.2d 234, 239 [125 P.2d 20], (Accord:
 
 Crump
 
 v.
 
 Northwestern Nat. Life Ins. Co.
 
 (1965) 236 Cal.App.2d 149, 151-152 [45 Cal.Rptr. 814];
 
 Ford
 
 v.
 
 Providence Washington Ins. Co.
 
 (1957) 151 Cal.App.2d 431, 439 [311 P.2d 930].)
 

 Did either direction by Mr. Gaunt or a provision of the policy prevent Prudential from applying the dividends to prevent a forfeiture?
 

 Under the heading “Dividend Provisions” the Gaunt policy stated: “Upon proper written request to the Home Office, any such dividend may be (1) paid in cash, or (2) applied to the reduction of any premium then due, or (3) applied at net single premium rates at the insured’s attained
 
 *24
 
 age to provide a paid-up life addition to the amount of insurance, or (4) left to accumulate with compound interest at the rate authorized from time to time by the Board of Directors, but not less than 2% per annum. If no other option has been elected within 31 days after the policy anniversary, any such dividend will be paid in cash unless it has been applied to modify any non-forfeiture value as provided in the policy. Upon proper written request to the Home Office, any paid-up additions may be surrendered and any dividend accumulations may be withdrawn unless, in either ease, they have been applied to modify any non-forfeiture value as provided in the policy or are required as security for a loan. The surrender value of dividend additions is their net value on the date of surrender, but not less than the dividends used to provide such additions. ’ ’
 

 Prudential argues that Mr. Gaunt exercised the fourth policy option requiring dividends to be accumulated. The contention is based upon a notation in Mr. Gaunt’s policy application: “Div left to accumulate.” The notation is handwritten in a box entitled “State any special request.” In the same box, in different handwriting followed by the initials “D.G.” appears a second notation, “Please issue enough insurance to cover $28.27 mo. premium. Mod #3” No extrinsic evidence was offered to explain these cryptic notations.
 
 [3]
 
 Did Mr. Gaunt thereby intend to exercise the fourth policy option ? If he did so intend, does the notation constitute a “proper written request to the Home Office” within the meaning of the “Dividend Provisions” of the policy? Although the construction of the contract was within the issues pleaded and tried, the trial court did not decide either of these questions and did not construe the dividend provisions of the policy. We are not called upon to decide whether the evidence was sufficient to support a finding that Mr. Gaunt exercised the fourth option or to decide whether the trial court’s construction of the policy was correct because there is a complete absence of either findings of fact or conclusions of law purporting to resolve this critical issue.
 

 Upon retrial if the court finds, on whatever evidence may then be presented, that Mr. Gaunt did exercise the fourth policy option, the conclusion will follow that Prudential was
 
 *25
 
 not required to apply the accrued dividends to prevent forfeiture of the policy.
 
 (Baker
 
 v.
 
 Northwestern Mut. Life Ins. Co.
 
 (1945) 67 Cal.App.2d 780 [155 P.2d 663].) However, if the court finds that Mr. Gaunt did not exercise his policy option, the court will award judgment in favor of Mrs. Gaunt because Prudential did not exercise the options given to it in the policy.
 

 The policy states, “If no other option has been elected within 31 days after the policy anniversary, any such dividend will be paid in cash unless it has been applied to modify any non-forfeiture value as provided in this policy.” The policy does not specify the precise time within which Prudential may pay the dividends in cash or apply them to modify a nonforfeiture value. The time to exercise these options is therefore a reasonable time. Prudential never at any time paid or offered to pay Mr. Gaunt’s dividends in cash, even though dividends had accrued in 1961 and 1962. If. Mr. Gaunt gave no contrary instruction, Prudential according to its policy had the obligation to pay those dividends in cash to him. When that obligation arose in January of 1961 and 1962 Prudential could not have applied the accrued dividends “to modify any non-forfeiture value as provided in this policy” because there was at that time no default, which is an express condition precedent to the operation of the nonforfeiturevalue clauses. The debt to Mr. Gaunt continued during the months following January 20, 1962, including the month of October in which Mr. Gaunt failed to pay his premium. Prudential cannot fail to pay Mr. Gaunt and refuse to credit the accrued dividends to the payment of the October premium, insist upon a forfeiture which would not have occurred if its debt to Mr. Gaunt had been set off against his debt to them, and, after Mr. Gaunt’s death, successfully assert its option to apply the dividends to purchase reduced paid-up insurance.
 

 If Prudential had the duty to apply the dividends to prevent forfeiture by reason of the failure of Mr. Gaunt to exercise his policy options and the failure of Prudential to pay the dividends in cash, the effect of the imposition of that duty is not to revive the extended insurance clause, which was expressly canceled by the policy endorsements. The extended insurance clause specifically applied only in the event of default in payment of the premiums. The result of the application of the duty to apply dividends to the payment of a premium is to erase the default. The policy thus continues
 
 in
 
 
 *26
 
 force upon precisely the same terms as would have been applicable had the insured paid each premium on time.
 

 The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.
 

 Kaus, P. J., and Stephens, J., concurred.
 

 [1]
 

 Mrs. Gaunt cites
 
 McCary
 
 v.
 
 John Hancock Mut. Life. Ins. Co.
 
 (1965) 236 Cal.App.2d 501 [46 Cal.Rptr. 121], to support her position. The case does not help Mrs. Gaunt. In
 
 McCary
 
 six of the twelve premium payments due during the year preceding the claim were accepted after the expiration of the grace period and in each of these instances a "late payment offer ” was sent to the insured, which special offer permitted reinstatement of the policy without evidence of insurability. The insurance company’s supervisor testified that it was obvious to him that the insured was acting under a mistake as to which premiums were due when he sent his critical premium check. The company cashed the cheek, deposited the money and did not advise the insured that his payments had not been charged his account in the same manner as his prior late payments had been charged. Judgment in favor of the insurance company was reversed on appeal. The trial court had refused to instruct the jury on waiver and estoppel on the ground that the evidence was insufficient as a matter of law to support a finding in favor of the insured on those issues.
 

 [2]
 

 The principal concern of the opinion was the construction and application of a statute, obviously distasteful to the court, which required that contracts for tontine insurance or other term or paid-up insurance contain a nonforfeiture clause after payment of three full annual premiums and which terminated the right of an insurance company to do business in this state if the company issued any non complying policies. The court refused to read the statutory provision into the policy and held that the sole remedy for failure to include the statutory clause was the forfeiture of the right of the company to do business.
 

 [3]
 

 Prudential called as its witness its agent who sold Mr. Gaunt his policy and who participated with Mr. Gaunt in filling out the application. The agent, however, was not asked about the discussions which occurred at the time the policy application was filled out.