[Civ. No. 24935. Second Dist., Div. Three. Aug. 8, 1961.]

AMERICAN OIL SERVICE (a Corporation), Appellant, v. HOPE OIL COMPANY (a Corporation) et al., Respondents.

Jesse M. Allen and Richard G. Wilson for Appellant.

Brown and Grisham for Respondents.

SHINN, P. J.—Prior to March 1952, Hope Oil Company and May and Richards, hereinafter referred to as Hope, or defendant, owned two units suitable for the reconditioning of oil wells which were then and for some time had been operated by American Oil Service, hereinafter called American, or plaintiff, in the reconditioning of oil wells upon a profit-sharing agreement with Hope. About the first of March, Hope agreed to purchase a third unit to be operated under similar conditions by American. This unit was constructed and turned over to American and used with the others. The agreement was reduced to writing under date March 1, 1952, although it was not executed by the parties until December 26, 1953. In the interim numerous drafts of an agreement had been prepared by Hope and rejected by American. By the terms of the agreement American was to operate the equipment and was to pay to Hope (1) "one-half of all gross money earned for all work done by units 1, 2 and 3 and any other rentals"; (2) "one-half of the repair expenses"; (3) $2,000 per year for insurance and $3,000 per year for services of Hope in overseeing their interests in the equipment; (4) $130,000; and it was also provided that when said sums had been paid Hope would transfer to American one-half interest in the equipment.

Hope agreed to pay (1) one-half repair expense on pickups used in the business; (2) 50 cents per operating hour toward the compensation of a contact man who would secure work for the equipment; other provisions of the agreement are not relevant to the present controversy.

The contract was performed until a dispute arose in August 1958 with respect to the amount that American had paid on the purchase price of a half interest in the equipment. American first claimed that it had paid all but about $2,625.13 of the purchase price but after review of the account claimed it was fully paid, whereas Hope claimed there was an unpaid balance of around $44,381.75. Plaintiff instituted the present action for declaratory relief, alleging it had paid in full for a half interest in the equipment and alleging also that there was a dispute as to the amount that defendant had paid for repairs in 1952. While the complaint alleged that plaintiff had fully performed under the agreement, it was not alleged that plaintiff had overpaid defendant.

Defendant answered, specifically admitting that "the agreement referred to has not been cancelled or rescinded and that plaintiff has at all times complied with all of the terms and conditions of said contract on its part to be performed and is not in any respect in default thereunder." It was alleged, however, that in February 1953 the parties entered into a parol agreement modifying the written agreement in that plaintiff agreed that defendants would be released from its promise to pay 50 cents per hour for the services of the contact man. It was further alleged "for further answer to said paragraph [V] defendants allege that in addition to the obligations of plaintiff enumerated in said paragraph, plaintiff was required to keep the equipment described in said agreement in good repair." It was not alleged that the written agreement was modified with respect to defendant's obligation as to the repairs. The answer prayed for an accounting.

The contentions of the parties were disclosed by a joint pretrial statement. Plaintiff contended that each party was required to pay one-half of the repair expense, whereas defendant claimed that notwithstanding the fact that it had each month reimbursed plaintiff for one-half of the repair expense paid by plaintiff it was entitled to the return of the total sums paid by it and that plaintiff was to stand all the repair expense. Defendant contended also that under the alleged oral modification of the agreement, which plaintiff denied, it was to be reimbursed for all sums it had paid for the services of the contact man. There was no dispute as to either of these amounts. The following figures were agreed upon: if defendants were entitled to reimbursement of the sums paid for repairs and the contact man, plaintiff would owe a balance on the purchase price of $44,381.75 up to August 31, 1958; if defendant is reimbursed for the repairs only, plaintiff would owe a balance of $30,037.88; if defendant is reimbursed for the amounts paid for the contact man alone the contract balance would be $23,201.30.

It was not and is not questioned that if defendant was chargeable with one-half the repair expense and with what it had paid toward the compensation of the contact man the purchase price of a half interest in the equipment would have been fully paid May 31, 1957, and the payments made by plaintiff to defendant up to August 31, 1958, would have exceeded plaintiff's total obligations under the contract by the amount of $31,588.13.

Thus, the primary issue was when, if at all, was plaintiff paid up in full, and this would require a determination whether the agreement had been orally modified with respect to the compensation of the contact man and whether defendant was properly chargeable with one-half of the repair expense. These facts being ascertained would determine that plaintiff either had or had not overpaid the purchase price, and the amount of any overpayment.

Neither in the pleadings nor the pretrial statement was it asserted by plaintiff that any overpayment it had made was due to a mistake of fact nor was it asserted by defendant that any overpayment was made voluntarily with full knowledge of the facts.

The court found the agreement had not been modified; the purchase price of the equipment had been paid in full May 27, 1957, and thereafter plaintiff had paid defendant $31,588.13. The finding that the purchase price was fully paid May 27, 1957, implied that defendant was not entitled to reimbursement for sums paid for repairs or for the contact man. Judgment was in favor of plaintiff for $31,518.13 and establishing its half ownership in the equipment.

Defendant made a motion for a new trial. Upon the hearing of the motion defendant advanced the contention that plaintiff's overpayments were made voluntarily and were not recoverable.

Plaintiff maintained on the hearing of the motion that the payments had been made under mistake of fact.

Defendant also insisted that even if the payments were made under mistake of fact, yet as the owner of a half interest in the equipment, it was entitled to a half of the rental received by plaintiff, and that it had been paid no more than was due it; but as nearly as we can determine this contention was not advanced during the trial. However, the evidence covered the entire field of the operations of the parties under the agreement and the circumstances in which plaintiff's payments had been made.

The court amended its findings and found that the overpayments had been made voluntarily and were not recoverable. Judgment was rendered establishing plaintiff's half interest in the equipment and denying a recovery of any sums paid. Plaintiff appeals.

On the appeal plaintiff's only contention for reversal is that the evidence without conflict established that its payments were made through a mistake of fact and are therefore

recoverable; and defendant defends the finding to the contrary.

Although defendant has not appealed it may advance any contentions which would defeat, in whole or in part, any judgment for money in favor of plaintiff. (Code Civ. Proc., § 956.) Defendant does not claim there was insufficient evidence to support the finding that the agreement was not modified with respect to the wages of the contact man. It concedes there was ample evidence to justify the construction of the agreement as requiring defendant to pay half the cost of repairs. However, it maintains that in any event, it was entitled to receive the amount it did receive by virtue of its ownership of a half interest in the equipment. Plaintiff replies to this contention.

We have first to consider plaintiff's contention that its payments were made under a mistake of fact. We conclude that this contention must be sustained. When the agreement was signed, Mr. Van Hooser, plaintiff's president, who was unable to read, put it away and paid no further attention to it. Plaintiff's accountant, Mr. Pihlstrom, was not familiar with the terms of the agreement. He knew how the money that came in should be divided with defendant and that $130,000, in addition to other amounts payable by plaintiff, must be paid on the purchase price of the equipment. However, he did not set up an account charging plaintiff with $130,000 and crediting it with payments made on the purchase price.

As money came in checks were issued to defendant, monthly, comprising one-half of the rentals plaintiff had received, plus a monthly payment toward the $5,000 plaintiff was to pay defendant annually for insurance and supervision, less 50 cents per hour as defendant's share of earned commissions of the contact man. At the same time he presented defendant with a statement for one-half of the current repairs which plaintiff had paid. Defendant paid these invoices monthly. Pihlstrom testified that Mr. Richards, acting for defendant, requested that for tax reasons it was desirable to credit on the books one-half of each check to rentals and one-half to purchase of the equipment. Although Mr. Richards denied having given such instructions the books were set up on that basis. Mr. Van Hooser agreed to this arrangement. While the books would show the amounts that were credited to the purchase this was only on the basis of the arbitrary and false assumption that a half of each payment should be credited to amounts

due to defendant and payable before anything was credited to the purchase price.

Matters progressed in this way until June 1958. Neither party furnished a statement to the other which purported to show the amount that remained unpaid on the contract price, nor was the matter discussed. About June 1958 at the request of Van Hooser, Pihlstrom prepared a statement in accordance with the books. This showed a balance then unpaid of $2,625.13. When the statement was shown Mr. Richards and an offer was made to pay the amount, Van Hooser was informed by Richards that defendant would claim an unpaid balance of some $40,000. For the first time Van Hooser was informed that defendant would claim that it was entitled to reimbursement of the amounts it had paid for repairs and for the contact man. Van Hooser then took the contract from his safe, and when Pihlstrom prepared an account in accordance with the agreement it was found that contract was fully paid up by May 31, 1957.

The court's findings, as modified, read in part: ''Plaintiffs' payments to defendants in excess of the terms of the contract for the period from June 1, 1957 through August 31, 1958 totaled $31,588.13 but because said payments were voluntary payments and were made with full knowledge of all of the facts relative thereto plaintiff is not entitled to a judgment for said overpayments.''

In the minute order ruling on the motion for new trial the court stated that the payments made were voluntary ''under cases of *Western Gulf Oil Co.* v. *Title Ins. & Trust Co.,* 92 Cal.App.2d 257 [206 P.2d 643] and *Texas Co.* v. *Todd,* 19 Cal.App.2d 174 [64 P.2d 1180].'' These cases are relied upon by defendants in support of their contention that plaintiffs' payments were made voluntarily and for that reason are not recoverable. They state the familiar rule that a payment voluntarily made with knowledge of the facts affords no ground for an action to recover it back. But it is elementary that an excessive payment made in ignorance of the fact that it is excessive is recoverable. (Restatement, Restitution, § 20, p. 92.) The only question is whether one rule or the other has application to the facts of the case.

 There was insufficient evidence to justify a finding that plaintiff through its president, its accountant, or otherwise had such knowledge of the facts as would have rendered the payments voluntary. It was clearly established that the accounting which charged one-half the rentals paid to de-

fendant to income and one-half to the purchase price did not reflect the true amounts to be credited on the purchase price under the terms of the agreement. This fact was unknown for six years, due to Van Hooser's unfamiliarity with the books and Pihlstrom's unfamiliarity with the agreement. Although they had the means of knowledge and could have discovered the facts at any earlier time, their neglect to do so was merely a mistake of fact upon their part. They did not wake up for another year to the fact that the contract had been paid in full May 29, 1957.

In the *Texas Co.* and *Western Gulf Oil Co.* above mentioned, the respective debtors had full knowledge of the facts, a dispute existed as to the proper interpretation of a contract, and as to the amount of the debt, and the sums in question were paid in settlement of the controversy. This was not the situation in the case at bar.

Whether the payments were made voluntarily or through mistake depended upon the intentions of plaintiff in making them. These were to be judged in light of the facts that were known to plaintiff. Means of knowledge were not the equivalent of knowledge. We would suppose that most mistakes of fact occur through failure to resort to means of knowledge.

There was no dispute as to the unpaid balance while the questioned payments were being made. It was not known to either Van Hooser or Pihlstrom that Hope would claim that the agreement had been modified or that it was not chargeable with any part of the repair expense. The payments were not made in settlement of a disputed claim. When the dispute arose plaintiff made no further payments. A debtor who pays a bill twice, forgetting that it has been once paid, and without the creditor's asserting a demand, is clearly entitled to recover the overpayment as having been made involuntarily. This is the present situation. Plaintiff is not in the position of a debtor who, knowing that his debt has been paid in full, accedes to the demand of his creditor and pays a second time in order to settle the controversy.

The question whether Hope was entitled to receive all the payments made after May 27, 1957, as the owner of one-half interest in the equipment, regardless of the circumstances in which the money was paid, has not been answered by the trial court nor, in fact, was the contention advanced except on motion for a new trial. There was evidence, however, that subsequent to May 29 defendant had paid $8,706.19 as one-half of the cost of repairs. It had also paid $6,458.23 for insurance

and supervision, for which it had received partial reimbursement according to the contract.

It is a general rule that a cotenant occupying and using property is not accountable to his cotenants for enjoyment of such use. It is also settled that one cotenant must account to the others for rentals received from the property held in cotenancy.

We express no opinion as to which rule is applicable to the facts of the present case.

There are various reasons for our inability to dispose of the case without ordering a retrial. There are factual questions which must be determined in the trial court. Were we to direct a judgment in favor of plaintiff for the return of the overpayments it would mean that plaintiff has had the use of the property and may keep substantially all the income, which the parties call rental, without any compensation to defendant, and leaving defendant without reimbursement for repairs it paid for in the interim and without reimbursement of sums paid for insurance and supervision and the contact man.

We cannot affirm the judgment. To do so would create a new contract for the parties. They have no agreement for division of the income after plaintiff became the owner of a half interest in the equipment. They may or may not be satisfied with their original arrangement. A claim to reimbursement for moneys paid under mistake of fact rests upon equitable principles. (38 Cal.Jur.2d pp. 302, 303.) Defendant asserts grounds of estoppel. These factual questions require a retrial.

The judgment is reversed.

Vallée, J., and Ford, J., concurred.

A petition for a rehearing was denied August 29. 1961.