[No. B017929. Second Dist., Div. Seven. Nov. 3, 1987.]

INSURANCE COMPANY OF THE WEST, Plaintiff, Cross-defendant and Respondent, v.
HARALAMBOS BEVERAGE COMPANY et al., Defendants, Cross-complainants and Appellants.

1312

COUNSEL

Brown, Reed & Gibson and John E. Nordin II for Defendants, Cross-complainants, and Appellants.

Haight, Dickson, Brown & Bonesteel, Roy G. Weatherup, Michael J. Leahy, Mary J. Ueki and Jose H. Garcia for Plaintiff, Cross-defendant and Respondent.

OPINION

THOMPSON, J—Defendants Haralambos Beverage Company, Tony Haralambos, and H.T. Haralambos (collectively HBC), appeal from an adverse judgment on plaintiff Insurance Company of the West's (ICW) complaint for declaratory relief and equitable indemnification. Because a triable issue of material fact exists concerning ICW's right to equitable

indemnification, summary judgment was improperly granted. Reversed and remanded.

## FACTS & PROCEEDINGS BELOW

HBC, a beverage distributor, contracted with W.F. Mickey Body Company, Inc. (Mickey Body), a manufacturer of beverage route trailers, for the manufacture and sale of two trailers. Although HBC had agreed to pay Mickey Body for the trailers, HBC failed to do so after receiving delivery.[1] Mickey Body filed suit against HBC and others in United States District Court, Central District of California, on January 13, 1983 (No CV 83 0819 WMB (Bx)), for breach of contract, fraud, and wrongful possession.

HBC, through its private counsel, Brown, Reed & Gibson, tendered the defense of the Mickey Body suit to ICW, under HBC's commercial multi-peril policy. On May 4, 1983, ICW's agent, Sharon Killion, orally agreed to provide a defense subject to a reservation of rights during a telephone conversation with Attorney Nordin of the Brown firm.

According to Nordin's May 10, 1983 letter to Killion confirming their conversation of May 4, 1983, Killion had "advised [Nordin] that [the] defense would be under a reservation of rights and that [Killion] would forward a letter to [Nordin] setting forth the specific reasons for such a reservation." Further, HBC would be allowed to select its own counsel at ICW's expense, because ICW was defending under a reservation of rights. HBC would continue to be represented by the Brown firm, and ICW would select its own counsel to associate in the defense.[2]

The promised reservation of rights letter was not sent to HBC until almost six months later, on November 2, 1983. The letter stated, in pertinent part: "A review of the litigation indicates the plaintiff [Mickey Body] is

---

[1] West Coast Beverage Truck Sales, once Mickey Body's exclusive distributor, presented HBC with the opportunity to order the Mickey Body trailers. HBC agreed, and West Coast notified Mickey Body of the order. West Coast and Mickey Body were engaged in a fee dispute, and Mickey Body informed its customers, including HBC, that payments were not to be made through West Coast but were to be made directly to Mickey Body. HBC agreed with Mickey Body that it would pay Mickey Body for the trailers.

West Coast, however, induced HBC to pay it rather than Mickey Body, by lowering the trailers' purchase price. West Coast promised to indemnify and hold HBC harmless for any costs and expenses, including reasonable attorneys' fees, that HBC might incur as a result of having made payment to West Coast rather than to Mickey Body.

West Coast failed to tender full payment to Mickey Body. It deducted commissions that had been withheld by Mickey Body.

[2] In June 1983, HBC requested that West Coast defend the Mickey Body action pursuant to West Coast's indemnity agreement. West Coast did not do so.

praying for recovery of money damages. Please be advised that your policy with Insurance Company of the West offers coverage for bodily injury and property damage. Bodily injury is defined as 'bodily injury, sickness or disease sustained by any person which occurs during the policy period including death at any time resulting therefrom.' Property damage is defined as '(1) Physical injury to or destruction of tangible property which occurs during the policy period including loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.' Money damages do not fit either of the definitions described above, and, therefore, the Insurance Company of the West will not be in a position to indemnify you if a verdict is rendered based upon money damages.

"Your policy of insurance contains a definition of occurrence which indicates it is 'an accident, including continuous or repeated exposure to conditions which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.' Please be advised that many of the allegations involved in this complaint involve intentional acts and, therefore, would not be covered under the policy issued by Insurance Company of the West. . . .

"In view of the foregoing, any steps taken by Insurance Company of the West to investigate and defend this situation are undertaken fully reserving all rights we have under the above-captioned policy to deny coverage outright at a later date. Subject to this reservation of rights, we have allowed your personal attorneys, Brown, Reed & Gibson, to provide you a defense at our expense."

The Mickey Body action was tried on November 10 and November 23, 1983, and judgment was entered in favor of Mickey Body on March 26, 1984. The court found that Mickey Body had expected to receive $44,757.70 from HBC under the purchase agreement, and that Mickey Body had received only $3,711.06 due to HBC's breach of contract. The court awarded Mickey Body contract damages against HBC of $42,026, plus interest and costs.[3]

After unsuccessfully attempting to settle its coverage disputes with HBC, ICW filed the instant action for declaratory relief, seeking a declaration that the policy does not apply to the Mickey Body action and that ICW has no

---

[3] The court also awarded HBC $20,000 in fees and costs against West Coast pursuant to West Coast's indemnification agreement. West Coast, however, was found to be insolvent at the time of trial.

duty to defend or indemnify the claim because the claim does not arise from suit against the insured for bodily injury or property damages, or from damages caused by an "occurrence." ICW also sought equitable indemnification for defense costs incurred in the Mickey Body suit.

HBC answered the complaint and cross-complained for declaratory relief, seeking a declaration that ICW had a duty to defend, indemnify, and reimburse HBC for expenses incurred in the Mickey Body suit.

ICW successfully moved for summary judgment, and was awarded defense costs incurred in the Mickey Body action of $46,953.11, and costs of suit of $215.75. Judgment was entered on November 22, 1985, and this appeal followed.

### STANDARD OF REVIEW

The rules governing summary judgment procedure have been often repeated:

■ "We have summarized the well-established rules governing summary judgment procedure as follows: ' "The matter to be determined by the trial court in considering such a motion is whether the defendant (or the plaintiff) has presented any facts which give rise to a triable issue. The court may not pass upon the issue itself. Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedure of a trial. In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts." ' [Citation.]" (*Empire West* v. *Southern California Gas Co.* (1974) 12 Cal.3d 805, 808 [117 Cal.Rptr. 423, 528 P.2d 31].)

### ISSUES

With respect to coverage issues, HBC contends that ICW owed a duty to defend and indemnify under the policy's contractual liability coverage

endorsement, and that a triable issue of fact exists as to whether ICW is estopped from asserting coverage defenses.

With respect to restitution for defense costs, HBC contends a triable issue of fact exists as to whether ICW voluntarily paid defense costs.

## DISCUSSIONS

### A. *ICW Owed No Duty to Defend and Indemnify HCW in the Mickey Body Action*

■ We find that the Mickey Body complaint contained no claim that can reasonably be construed as potentially seeking recovery for property damage or bodily injury. Hence we conclude there was no duty owed by ICW to defend HBC in that action.

■ "An insurer's duty to defend litigation brought against its insured is broader than its duty to indemnify (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 276-277 [54 Cal.Rptr. 104, 419 P.2d 168]; [citations]). The insurer must furnish a defense when it learns facts creating the potential of liability under the policy [citations]. But the insurer's obligation is not unlimited; the duty to defend is measured by the nature and kind of risks covered by the policy [citations]." (*Giddings* v. *Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213, 217-218 [169 Cal.Rptr. 278].)

■ " 'In construing the language of an insurance policy, a court should give the words used their plain and ordinary meaning, unless the policy clearly indicates to the contrary . . . . When the language is clear, a court should not give it a strained construction to impose on the insurer a liability it has not assumed. . . .' [Citation.]" (*St. Paul Fire & Marine Ins. Co.* v. *Superior Court* (1984) 161 Cal.App.3d 1199, 1202 [208 Cal.Rptr. 5].)

This case, like *Giddings, supra,* is readily distinguishable from *Gray* and many of the cases following it, which have broadly interpreted the insurer's duty to defend. (See, e.g., *Val's Painting & Drywall, Inc.* v. *Allstate Ins. Co.* (1975) 53 Cal.App.3d 576 [126 Cal.Rptr. 267].) In *Val's Painting,* "damage of the type covered by the policy had undisputably occurred, and the insurer relied on an unclear exclusionary clause in asserting it was not obligated to defend its insured. ■ Here, on the other hand, the question concerns the scope of the basic coverage itself: did the [Mickey Body action] potentially seek to recover for 'property damage' [and bodily injury damage] covered by [the ICW] polic[y]?" (*Giddings, supra,* 112 Cal.App.3d at p. 218; *St. Paul Fire & Marine, supra,* 161 Cal.App.3d at p. 1203, fn. 1.)

Here, the policy contained the standard comprehensive general liability endorsement that the "company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of A. bodily injury or B. property damage to which the insurance applies . . . ."[4] Similar phrases have been "uniformly interpreted as referring to liability 'ex delicto' as distinguished from 'ex contractu'" (*Fireman's Fund Ins. Co.* v. *City of Turlock* (1985) 170 Cal.App.3d 988, 995 [216 Cal.Rptr. 796]); thus the policies have been held to cover tort but not contract liability. (*Ibid.*; *International Surplus Lines Ins. Co.* v. *Devonshire Coverage Corp.* (1979) 93 Cal.App.3d 601, 611 [155 Cal.Rptr. 870].)

HBC was entitled to a defense only if the Mickey Body suit potentially sought recovery for damages because of property damage or bodily injury. An analysis of the nature of damages sought in the Mickey Body action is a question of law. (*Fireman's Fund, supra,* 170 Cal.App.3d at p. 995.)

A review of the Mickey Body complaint reveals no claim which can reasonably be construed as potentially seeking recovery for property damage or bodily injury. Quite to the contrary, HBC's liability under each of the four causes of action depended upon the existence of a contractual duty to pay Mickey Body for the two beverage trailers. Although the complaint sought recovery of punitive damages for fraud in inducing Mickey Body to enter into the purchase agreement when HBC had no intention of paying Mickey Body, that cause of action, like the others, was premised upon a breach of contract, and not property damage or bodily injury. (See *Fresno Economy Import Used Cars, Inc.* v. *United States Fid. & Guar. Co.* (1977) 76 Cal.App.3d 272 [duty to defend did not arise because damages claimed were predicated on misrepresentations concerning automobiles sold and leased, and not from any injury or damage to the automobiles].)

While HBC relies on the policy's contractual liability coverage endorsement, it is inescapable that the policy, with or without that endorsement, did not cover the damages sought and awarded against HBC. (See *Fireman's Fund Ins. Co., supra,* 170 Cal.App.3d at p. 995.) Not only was the Mickey Body action premised on a breach of contract theory, the record contains no indication of any other facts giving rise to a claim of property damage or bodily injury. In rejecting an insured's identical argument, the

---

[4] According to the policy, bodily injury is defined as " 'bodily injury, sickness or disease sustained by any person which occurs during the policy period including death at any time resulting therefrom.' Property damage is defined as '(1) Physical injury to or destruction of tangible property which occurs during the policy period including loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.' "

court in *International Surplus Lines Ins. Co.* v. *Devonshire Coverage Corp., supra,* stated, "The 'triggering event' of the Hartford coverage is necessarily an 'occurrence' which caused 'bodily injury' or 'property damage' as those terms are defined in the Hartford policy." (93 Cal.App.3d at p. 610.)

As in *International Surplus Lines,* coverage under the instant policy is predicated on the existence of an "occurrence," which is defined as " 'an accident, including continuous or repeated exposure to conditions which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.' " In construing a similar clause, the court in *St. Paul Fire & Marine* noted, *supra*: "In its plain and ordinary sense, 'accidental' means 'arising from extrinsic causes; occurring unexpectedly or by chance[; or] happening without intent or through carelessness.' (Webster's Ninth New Collegiate Dict. (1983) p. 49.)" (161 Cal.App.3d at p. 1202.) "One who purchases an insurance policy against liability for property damage due to accident cannot reasonably expect to obtain coverage for consequences clearly outside the scope of the definition of accident." (*Hogan* v. *Midland National Ins. Co.* (1970) 3 Cal.3d 553, 561 [91 Cal.Rptr. 153, 476 P.2d 825].)

Mickey Body's claims against HBC are based on allegations that HBC intentionally and fraudulently withheld payment. HBC's conduct which assertedly gave rise to Mickey Body's claims must be deemed to have been purposeful. (See *St. Paul Fire & Marine, supra,* 161 Cal.App.3d at p. 1202 ["The termination of Fuh's employment was not an unintentional, unexpected, chance occurrence, and thus there is no potential liability under the insurance policy and petitioner owes no obligation to defend the [insureds]."].)

B. *ICW Is Not Estopped From Denying Coverage*

HBC contends, even assuming arguendo the validity of the coverage defenses, ICW waived the coverage defenses by defending the Mickey Body action without a sufficient reservation of rights. HBC thus argues ICW is estopped from denying coverage. HBC's claims of waiver and estoppel are based on ICW's failure to send a reservation of rights letter to HBC until almost six months after assuming the defense of the Mickey Body action. We disagree with HBC's position for, as will be discussed, HBC's failure to plead the essential elements of waiver and estoppel precludes it from asserting those affirmative defenses. ICW is therefore not estopped from denying coverage.

*1. An Insurer's Unconditional Defense of an Action Brought Against Its Insured Constitutes a Waiver of Policy Terms and an Estoppel of the Insurer to Assert Them*

In the preceding section we concluded there is no potential of coverage for the claims raised in the Mickey Body action. ▮ The general rule is that "[e]stoppel cannot be used to create coverage under an insurance policy where coverage did not originally exist." (*Miller* v. *Elite Ins. Co.* (1980) 100 Cal.App.3d 739, 755 [161 Cal.Rptr. 322].) Nevertheless, there is a well-established exception: " 'The general rule supported by the great weight of authority is that if a liability insurer, with knowledge of a ground of forfeiture or noncoverage under the policy, assumes and conducts the defense of an action brought against the insured, without disclaiming liability and giving notice of its reservation of rights, it is thereafter precluded in an action upon the policy from setting up such ground of forfeiture or noncoverage. In other words, the insurer's unconditional defense of an action brought against its insured constitutes a waiver of the terms of the policy and an estoppel of the insurer to assert such grounds.' [Citation.]" (*Ibid.*)

*2. An Insurer Can Avoid Waiver and Estoppel by Making an Adequate Reservation of Rights*

Because the duty of an insurer to defend may be broader than its duty to indemnify, the "insurer's 'dilemma' is how to defend the action without being held to have waived its claim of noncoverage of the policy. [Citation.]" (*Val's Painting & Drywall, Inc.* v. *Allstate Ins. Co., supra,* 53 Cal.App.3d at p. 585.) ▮ In California, it has long been established that "if the insurer adequately reserves its right to assert the noncoverage defense later, it will not be bound by the judgment [against the insured]." (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 279 [54 Cal.Rptr. 104, 419 P.2d 168].) ▮▮ Thus "the insurer can avoid being bound by the judgment against the insured if it secures a nonwaiver agreement from the insured [citations] or makes an adequate reservation of rights. [Citations.]"[5] (*Val's Painting, supra,* 53 Cal.App.3d at p. 586.)

---

[5] " '. . . A nonwaiver agreement is a bilateral contract, normally in writing, entered into by the assured and the insurer after the accident, providing that the insurer will defend the tort suit while reserving its right to assert nonliability under the policy at a later date. . . . [¶] A reservation of rights is very similar to a nonwaiver agreement, and it is subject to the same limitations and restrictions. It differs in being less formal than the nonwaiver and less tied to strict contract principles. The insurer need only notify, or attempt to notify, the assured that it is conducting the investigation and defense of the tort claim under a reservation of the right to assert policy defenses at a later time, and the assured's silence will usually be deemed acquiescence. Courts have in general been fairly liberal in implying reservations.' (Note (1955)

As noted in *Val's Painting, supra,* "[t]he authorities are split on the circumstances in which a unilateral reservation of rights will preserve the rights of the insurer. [Citations.] Thus, it has been said that courts are liberal in implying a reservation of rights and deeming the insured's acceptance of the defense to be acquiescence. [Citation.] On the other hand, it has been said that if the insured expressly refuses to consent to a reservation of rights, a unilateral reservation is ineffective; the insurer must make an election whether to defend or refuse to defend. [Citations.]

 ██ "In California, however, the theory that by defending the suit an insurer 'waives' its right to claim noncoverage rests upon the doctrine of estoppel.[6] There must be a showing that the insurer either intentionally relinquished a known right, or acted in such manner as to cause the insured reasonably to believe the insurer had relinquished such right, and that the insured relied upon such conduct to his detriment. [Citations.]" (*Val's Painting, supra,* 53 Cal.App.3d at pp. 586-587.)

Thus an insurer who assumes the defense of a disputed claim can avoid waiving coverage defenses and avoid estoppel by providing a sufficient and timely reservation of rights.[7]

### 3. *Waiver and Estoppel Are Affirmative Defenses*

 Waiver and estoppel are affirmative defenses; the burden of pleading and proving facts showing waiver and estoppel rests on the insured. (*Aetna Casualty & Surety Co.* v. *Richmond* (1977) 76 Cal.App.3d 645, 653 [143 Cal.Rptr. 75]["Neither by its letter to Richmond nor by its defense of the Ascasio claim on behalf of Richmond did Aetna waive the exclusionary clauses [citation]. Also, the facts showing the affirmative defense of waiver must be pleaded [citation] and this Richmond failed to do."]; *Gaunt* v. *Prudential Ins. Co.* (1967) 255 Cal.App.2d 18, 23 [62 Cal.Rptr. 624] ["It is fundamental that the burden of proving estoppel or waiver rests upon the party in whose favor those doctrines are claimed to inure."].)

---

68 Harv.L.Rev. 1436, 1446, 1447; fns. omitted.)" (*Val's Painting, supra,* 53 Cal.App.3d at p. 586.)

[6] "Although the terms 'waiver' and 'estoppel' are sometimes used indiscriminately, especially in the law of insurance, they are two distinct and different doctrines that rest on different legal principles. Strictly speaking, 'waiver' is used to designate the act, or the consequences of the act, of one side only, while 'estoppel' is applicable where the conduct of one side has induced the other to take such a position that it would be injured if the first should be permitted to repudiate its acts." (30 Cal.Jur.3d (1976), Estoppel and Waiver § 1, pp. 693-694, fns. omitted; *McDanels* v. *General Ins. Co.* (1934) 1 Cal.App.2d 454, 459 [36 P.2d 829].)

[7] We need not consider herein the sufficiency and timeliness of ICW's reservation of rights, due to our conclusion that HBC failed to properly plead the essential elements of the defenses of waiver and estoppel.

The general rule requiring estoppel and waiver to be pleaded does not apply where the facts of the matter appear on the face of the adversary's pleading. (*Phoenix Mut. L. Ins. Co.* v. *Birkelund* (1946) 29 Cal.2d 352, 363 [175 P.2d 5].) And if evidence on which estoppel is based is admitted without objection, the objection that the pleading does not set forth the estoppel is waived. (*Pacific Finance Corp.* v. *Foust* (1955) 44 Cal.2d 853, 858 [285 P.2d 632].)

*4. HBC Failed to Plead the Affirmative Defenses of Waiver and Estoppel*

"A waiver is the relinquishment of a known right. 'A waiver may occur (1) by an intentional relinquishment or (2) as 'the result of an act which, according to its natural import, is so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished.' [Citations.] Four elements must ordinarily be proved to establish an equitable estoppel: (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. [Citations.]" (*Gaunt* v. *Prudential Ins. Co., supra*, 255 Cal.App.2d at p. 23.)

Examining HBC's pleadings, neither HBC's answer to ICW's complaint nor HBC's cross-complaint[8] explicitly allege facts giving rise to the essential elements of waiver and estoppel.

Nor do HBC's pleadings adequately inform ICW of facts showing prejudice or detrimental reliance, which are essential to waiver and estoppel. Prejudice exists where the insured, in reliance on the insurer's defense under the policy, fails to retain an attorney, fails to negotiate a settlement, and fails to deal directly with the opposing party or counsel. (*Miller* v. *Elite Ins. Co., supra*, 100 Cal.App.3d at p. 755.) Here, none of these facts are pleaded, and we note an examination of the record tends to indicate an absence of prejudice. The record indicates HBC retained control of its own defense because it was allowed to be represented by its personal attorneys. While ICW retained the right to hire its own counsel to associate in the defense, the record does not reveal whether ICW did so.

---

[8] We have also examined HBC's proposed first amended cross-complaint. Although HBC raised in its notice of appeal the issue of the propriety of the trial court's denial of its motion to file the amended cross-complaint, HBC failed to brief this issue. Due to the lack of argument and citation of authority on this issue, we decline to review the order. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 479, pp. 469-470.)

HBC argues on appeal that it was prejudiced "because it never knew the exact nature of the reservation of rights being asserted before trial of the case was imminent. There was, therefore, no way it could have attempted to ascertain *additional* facts, in the [Mickey Body] action, which might have brought the case within the coverage of the insurance policy." We are not persuaded by this argument, which ignores the fact that the policy covers only bodily injury or property damage. As previously discussed, HBC's reliance on the contractual liability coverage endorsement is misplaced.

HBC cannot escape the consequences of failing to plead the affirmative defenses of waiver and estoppel by relying on ICW's pleadings, which do not contain the necessary facts. Moreover, ICW explicitly objected below that HBC failed to properly plead the defenses of waiver and estoppel.

We conclude, therefore, that ICW is not estopped from denying coverage. As there is no potential liability under the insurance policy, we find ICW owes no obligation to defend or indemnify HBC in the Mickey Body action.

C. *There Is a Triable Issue of Fact as to ICW's Right to Reimbursement of Defense Costs*

As ICW contends, appellate courts have affirmed judgments in which insurers were reimbursed for attorneys' fees paid in defending insureds against claims for which there was no obligation to defend. (*Western Employers Ins. Co.* v. *Arciero & Sons, Inc.* (1983) 146 Cal.App.3d 1027 [194 Cal.Rptr. 688]; *Safeco Title Ins. Co.* v. *Moskopoulos* (1981) 116 Cal.App.3d 658 [172 Cal.Rptr. 248, 18 A.L.R.4th 1301].) But we have found no case that holds "as a matter of law that amounts expended by an insurance company in partial defense of an action are always reimbursable in the event that a court should find there was no duty to defend." (*St. Paul Mercury Ins. Co.* v. *Ralee Engineering Co.* (9th Cir. 1986) 804 F.2d 520, 522.) In both *Western Employers* and *Safeco Title, supra* the issue of reimbursement was not disputed. (See *ibid.*)

A review of the law on the subject reveals two possible theories for recovery of litigation costs. One is equitable restitution. The other is an agreement or understanding between the parties that the insured would reimburse the insurer for litigation costs should the coverage issues be adjudicated in the insurer's favor.

It has been held that an insurer who had no duty to defend was not entitled to reimbursement of litigation costs where the record did not reflect an understanding that the insured would reimburse the insurer if the insurer eventually decided not to defend. (*St. Paul Mercury Ins. Co.* v. *Ralee Engineering Co., supra,* 804 F.2d at p. 522.) In the instant case, there is no evidence in the record of an agreement or understanding that HBC would reimburse ICW if there was no duty to defend. ICW claims the record shows, however, that HBC understood ICW would seek reimbursement in the event there was no duty to defend. ICW claims HBC knew, as a matter of law, of ICW's intent from both the oral reservation of rights and ICW's letter of December 9, 1983.

We do not think ICW has shown the existence of an agreement as a matter of law in order to prevail on motion for summary judgment. Even if ICW has established HBC's knowledge as of December 9, 1983, of ICW's intent to seek reimbursement, ICW has not proven the existence of an agreement or understanding between the parties on this point.

 With respect to equitable restitution, the general rule is that money voluntarily paid to another with knowledge of the facts cannot be recovered back. (*American Oil Service* v. *Hope Oil Co.* (1961) 194 Cal.App.2d 581, 586 [15 Cal.Rptr. 209].) Division Three of the First District Court of Appeal denied an insurer equitable restitution of litigation costs, finding its primary motivation in defending under a reservation of rights was to protect its own interests and not those of its insured. (*Travelers Insurance Co.* v. *Lesher* (1986) 187 Cal.App.3d 169, 203 [231 Cal.Rptr. 791].) The court explained: "Among settled principles of restitution is that a person who, incidental to the performance of his own duty or to the protection of his own things, has conferred a benefit upon another, is not thereby entitled to contribution. [Citation.] The insurer who is uncertain whether coverage is provided under a policy undertakes the defense of its insured under a reservation of rights in large part to protect *itself* from a subsequent claim that it breached its agreement with the insured. [Citation.] Although the assumption of the defense by the insurer without doubt also benefits the insured, it is not primarily undertaken for the insured's benefit." (*Ibid.*)

 Accordingly, we find there are triable issues of fact as to whether HBC agreed to reimburse ICW, and whether ICW conferred a benefit incidental to the protection of its own interests. Thus ICW failed to establish as a matter of law it was entitled to reimbursement of defense costs. Summary judgment was improperly granted.

## Disposition

The judgment is reversed and the case is remanded. Appellant shall recover costs on appeal.

Lillie, P. J. and Johnson, J., concurred.