995 F.2d 944
 ALLIANCE INSURANCE COMPANY, Plaintiff-Cross-Claimant-Appellee,
v.
Michael COLELLA, Defendant,
Alan Grahm; Robert Grahm; Sean F. Lee, and Associated
International, Inc., Defendants-Cross-Claimants-Appellants.
 No. 91-56357.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 5, 1993.
Decided June 18, 1993.
As Amended on Denial of Rehearing
and Rehearing En Banc
Sept. 3, 1993.
 
 James S. Link, Pasadena, CA, for appellants.
 Douglas A. Greer, Keith A. Fink and Richard P. Towne, Cotkin & Collins, Los Angeles, CA, for appellee.
 Appeal from the United States District Court for the Central District of California.
 Before: FARRIS, NORRIS, and REINHARDT, Circuit Judges.
 PER CURIAM:
 
 
 1
 Alan Grahm appeals the district court's sua sponte grant of summary judgment in favor of Alliance Insurance Co. ("Alliance"), holding that Alliance was obligated neither to defend nor indemnify its insureds, Michael Colella, H.O.M. Inc., and Home Buying Co-Op ("H.B.C."), with respect to Grahm's state court action against the insureds.
 
 
 2
 Grahm argues, among other things, that summary judgment was improperly granted because there was a genuine issue of material fact as to whether Alliance timely reserved its rights to assert defenses to coverage under its policy. We agree. Accordingly, we vacate the summary judgment and remand for further proceedings.
 
 
 3
 * The threshold question is whether Alliance waived its defenses to coverage under the policy. For even if Alliance's policy unambiguously excluded coverage for the state court action, Alliance could still be liable for indemnification and defense costs if it failed to timely notify its insureds that it was reserving its rights to rely on coverage limitations under the policy. The "general rule" in California is that
 
 
 4
 if a liability insurer, with knowledge of a ground of forfeiture or noncoverage under the policy, assumes and conducts the defense of an action brought against the insured, without disclaiming liability and giving notice of its reservation of rights, it is thereafter precluded in an action upon the policy from setting up such ground of forfeiture or noncoverage. In other words, the insurer's unconditional defense of an action brought against its insured constitutes a waiver of the terms of the policy and an estoppel of the insurer to assert such grounds.
 
 
 5
 Insurance Co. of the West v. Haralambos Beverage Co., 195 Cal.App.3d 1308, 1319, 241 Cal.Rptr. 427 (1987) (internal citation omitted).
 
 
 6
 Alliance undertook the defense of the insureds against the Grahm action on or about April 11, 1988. Hence, the question of waiver turns on whether the insureds were informed in April, or soon thereafter, of Alliance's intention to reserve its rights. The district court first addressed the question of waiver on motions for reconsideration of summary judgment filed by Grahm and the insureds. The court concluded, after reviewing numerous declarations and documents submitted on the question of waiver, that "[t]he evidence establishes as an uncontroverted fact that the insured was fully informed of the reservation of rights." See District Court's Order on Motions for Reconsideration at 2.
 
 
 7
 In reviewing summary judgment, we must evaluate the evidence in the light most favorable to the party against whom summary judgment was granted. Tzung v. State Farm Fire and Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989). Having done so, we hold that there is a genuine triable issue over whether Alliance timely reserved its rights under the policy.
 
 
 8
 On the one hand, three declarants testify that no reservation of rights letter was ever sent: (1) The insured, Michael Colella, declares that he "never received any letter indicating that Alliance Insurance Company was reserving any rights to contest coverage or any coverage defenses." Declaration of Michael Colella at 2; (2) The insureds' initial counsel, Jerome Rhodes, states that he was never "informed in writing of any coverage defenses or rights that Alliance may have reserved." Declaration of Jerome H. Rhodes at 2-3; and (3) The insureds' second counsel, Alan Gradwohl, declares that he never received any "written notification" from Alliance "setting forth the specific grounds upon which [they] were reserving rights to contest coverage." Declaration of Alan J. Gradwohl at 2. Gradwohl also states that, while he was coverage counsel for Alliance, he never sent the insureds or their attorney "any type of correspondence setting forth the specific grounds upon which Alliance was reserving its rights to contest coverage to its insureds." Id.
 
 
 9
 On the other hand, there is evidence that Alliance did send a timely reservation of rights letter to the insureds. Counsel for Alliance submits an unsigned copy of a reservation of rights letter dated April 11, 1988 addressed from Alliance's former counsel, Homer Cowan, to Jerome Rhodes. See Declaration of Douglas A. Greer at 3-4 and Exhibit E. Counsel declares that he obtained this document from Homer Cowan. Id. In addition, counsel for Alliance declares that on August 28, 1990, he and his associate found the following documents in the files of the insureds' attorneys: (1) a "Settlement and Release Agreement" dated June 22, 1988, signed by the insureds and Alliance, which expressly incorporates the April 11, 1988 reservation of rights letter, but does not attach the letter thereto. Id. at 4 and Exhibit F; (2) a letter dated April 19, 1990--approximately two years after Alliance agreed to defend the insureds--from the insured's counsel to the insured which purports to enclose a copy of the "insurer's April 11, 1988 Reservation of Rights letter to your [former] attorney, Jerome H. Rhodes." See Supplemental Declaration of Sherry L. Hovind at 3 and Exhibit A; and (3) two letters from Alliance's counsel which purport to memorialize conversations in which they discussed the reservation of rights with the insureds. See Declaration of Douglas A. Greer at 3 and Exhibits C and D.
 
 
 10
 On this record, we cannot say that the only rational conclusion a finder of fact could draw is that the reservation of rights letter was sent, and that no waiver occurred. Accordingly, we remand for the district court to conduct a trial on the question whether Alliance waived its defenses to coverage.
 
 II
 
 11
 If it is determined on remand that Alliance did not waive its defenses to coverage, then the issue of coverage turns on the interpretation of the policy's language. Grahm argues that the district court interpreted the "Advertising Injury" clause too narrowly and concluded erroneously that Alliance was under no duty to defend or indemnify the insureds on the underlying state court action. We reject Grahm's arguments.
 
 
 12
 The district court properly held that Alliance had no duty to indemnify the insureds on the state court judgment, because the state court only found the insureds liable for payment of the bank debt they assumed by contract under the transaction. See State Court's Statement of Decision at 6. Contractual damages are unambiguously excluded from coverage under the Alliance policy.
 
 
 13
 Likewise, the district court correctly held that Alliance had no duty to defend the state court action because the complaint did not seek damages within the scope of the "Advertising Injury" clause, or any other portion, of the policy. Grahm's attempt to read the term "unfair competition" expansively to include all practices which violate the Unfair Business Practices Act, Cal.Bus. & Prof.Code § 17200, has now been rejected by the California Supreme Court in Bank of the West v. Superior Court of Contra Costa County, 2 Cal.4th 1254, 1272, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992). Moreover, Grahm's argument that the term "piracy" should be read broadly to mean the "appropriation of a business owned by another through illegal, fraudulent or wrongful acts," Appellant's Opening Brief at 26, is both unsupported and unpersuasive. We are confident, in light of the ruling in Bank of the West, supra, that the California courts would reject this argument.
 
 
 14
 Accordingly, the summary judgment is VACATED and the case is REMANDED for further proceedings.
 
 FARRIS, Circuit Judge, dissenting:
 
 15
 "There's no such thing as a free lunch," an aphorism of political economy now heard throughout the land, dates back to the 19th Century, when saloon and tavern owners advertised 'free' sandwiches and tidbits at midday to attract patrons. Richard Lederer, On Language; Haunted words, N.Y. Times, Sept. 3, 1985, § 6, at 14. "Anyone who ate without buying a beverage soon discovered that 'free lunch' wasn't meant to be taken literally; he would be tossed out unceremoniously." Robert Hessen, The New Palgrave: A Dictionary of Economics (1987). Grahm has eaten for free, but has yet to be tossed out.
 
 
 16
 Alliance had no duty to indemnify the insureds on the state court judgment, nor a duty to defend the state court action. On this much--and only this much--we agree. Without so much as a word of discussion on the essential elements of waiver, the majority remands this case for trial.
 
 
 17
 Under California law, waiver is an affirmative defense, for which the insured bears the burden of pleading the essential elements. Insurance Co. of the West v. Haralambos Beverage Co., 195 Cal.App.3d 1308, 1318, 241 Cal.Rptr. 427 (1987). In cases where waiver has been found in the insurance context, there is generally some element of misconduct by the insurer or detrimental reliance by the insured. See e.g., Id. at 1319-21, 241 Cal.Rptr. 427; Miller v. Elite Ins. Co., 100 Cal.App.3d 739, 161 Cal.Rptr. 322 (1980); Elliano v. Assurance Co. of Am., 3 Cal.App.3d 446, 83 Cal.Rptr. 509 (1970). Federal cases applying California law also suggest such misconduct or reliance must be shown. Intel Corp. v. Hartford Acc. & Indem. Co., 952 F.2d 1551, 1560 (9th Cir.1991).
 
 
 18
 The insureds have not alleged misconduct. The waiver doctrine prevents an insurer from "sandbagging" the insured by constantly raising additional grounds for its denial of coverage. Id. This is not a case where Alliance denied coverage on one ground without thoroughly investigating it and then defended a subsequent lawsuit on grounds which it develops during discovery for trial. See McLaughlin v. Connecticut Gen. Life Ins. Co., 565 F.Supp. 434, 451 (N.D.Cal.1983).
 
 
 19
 Nor have the insureds set forth in their pleadings, or in the Motions for Summary Judgment or Reconsideration, any allegations or facts which would indicate that they detrimentally relied upon or were prejudiced by Alliance's conduct. They have therefore failed to meet their burden of pleading the essential elements of waiver. See Haralambos, 195 Cal.App.3d at 1320 n. 7, 241 Cal.Rptr. 427 ("We need not consider herein the sufficiency and timeliness of [the insurer's] reservation of rights, due to our conclusion that [the insured] failed to properly plead the essential elements of the defenses of waiver and estoppel."); Intel, 952 F.2d at 1561.
 
 
 20
 The "steaks" are high, involving more than sandwiches and tidbits. I respectfully dissent.