107 F.3d 15
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
DILLINGHAM CONSTRUCTION PACIFIC, LTD., dba Hawaiian Dredging
& Construction Co.; Dillingham Construction,
Inc., Plaintiffs-Appellees,
v.
AETNA CASUALTY & SURETY COMPANY, Defendant,
and
Travelers Indemnity Company, Defendant-Appellant.
DILLINGHAM CONSTRUCTION PACIFIC, LTD., dba Hawaiian Dredging
& Construction Co.; Dillingham Construction,
Inc., Plaintiffs-Appellees,
v.
AETNA CASUALTY & SURETY COMPANY, Defendant-Appellant.
 Nos. 95-17078, 95-17191.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 12, 1997.
Decided Feb. 19, 1997.
 
 Before: GOODWIN, LEAVY and THOMAS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The Travelers Indemnity Company ("Travelers") and the Aetna Casualty & Surety Company ("Aetna") appeal the district court's decisions to deny their motions for summary judgment and to grant the summary judgment motions of Dillingham Construction Pacific, Ltd., dba Hawaiian Dredging & Construction Company ("HDCC"). HDCC brought this declaratory action to establish Travelers' and Aetna's duty to defend HDCC against charges leveled by the United States Government (the "Government") arising out of HDCC's and its subcontractor Finlay's work on the Johnston Atoll Chemical Agent Disposal Systems project ("JACADS"). We reverse the district court's grant of summary judgment in favor of HDCC and remand with instructions to enter judgment in favor of Travelers and Aetna.
 
 
 3
 In this instance, the United States Attorney for the District of Hawaii mailed letters to HDCC on May 5, 1993 and July 8, 1993 outlining its claims. Independently, the Deputy Inspector General of the United States Department of Defense served HDCC with a subpoena duces tecum on May 20, 1993 pertaining to the project. HDCC and Finley argue that the insurers' duty to defend under the respective insurance policies require the insurers to pay for legal expenses incurred in responding to the letters and subpoena.
 
 
 4
 Under California law, "an insurer has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement." Waller v. Truck Ins. Exch., 11 Cal.4th 1, 19, 900 P.2d 619, 627, 44 Cal.Rptr.2d 370, 378 (1995). That is, an insurer must defend any action which "potentially seeks damages within the coverage of the policy." Montrose Chem. Corp. v. Superior Court, 6 Cal.4th 287, 295, 861 P.2d 1153, 1157, 24 Cal.Rptr.2d 467, 471 (1993) (quoting Gray v. Zurich Ins. Co., 65 Cal.2d 263, 275, 419 P.2d 168, 176, 54 Cal.Rptr. 104, 112 (1966)). "To prevail, the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential. In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot." Id. at 300, 861 P.2d at 1161, 24 Cal.Rptr.2d at 475.
 
 
 5
 The policies insure HDCC only for "liability imposed by law" or for sums it becomes "legally obligated to pay as damages." This language limits recovery to tort liability and precludes coverage for damages based upon the insured's contractual obligations. Stanford Ranch, Inc. v. Maryland Cas. Co., 89 F.3d 618, 624 (9th Cir.1996) (citing Insurance Co. of the West v. Haralambos Beverage Co., 195 Cal.App.3d 1308, 1317, 241 Cal.Rptr. 427, 430 (1987)). A general liability policy is intended to insure against the possibility that the work of the insured will cause bodily injury or damage to property. Western Employers Ins. Co. v. Arciero & Sons, Inc., 146 Cal.App.3d 1027, 1031, 194 Cal.Rptr. 688, 690 (1983). It is not intended to be a "performance bond." Id.; see also New Hampshire Ins. Co. v. Vieira, 930 F.2d 696, 701 (9th Cir.1991) (general liability policy not "a guarantee or contractual performance bond").
 
 
 6
 HDCC argues the Government asserts numerous claims, including breach of contract, misrepresentation, negligent radiography by Finlay, and negligent work by HDCC. While HDCC concedes the general liability policies should not be read as performance bonds, it argues that nothing excludes coverage for potentially recoverable property damage arising from an occurrence just because the relationship between the parties and the duties in question arise from a contract. The district court decision, HDCC argues, was not premised on a theory of coverage for solely economic loss resulting only from a breach of contract. HDCC contends the Government's claims raise the potential for legal liability for property damage.
 
 
 7
 The fact that the Government's claims arise out of HDCC's and Finlay's failure to perform their contractual duties to its contractual specifications is fatal to HDCC's cause. "If a claim is dependent upon the existence of an underlying contract, the claim sounds in contract, as opposed to tort." Stanford Ranch, 89 F.3d at 625 (citing Haralambos, 195 Cal.App.3d at 1317, 241 Cal.Rptr. at 430). In Stanford Ranch, 89 F.3d at 620, a master developer executed purchase agreements selling parcels of a master-planned community to other developers, called "sub-developers." The sub-developers later brought suit against the master developer for breach of contract and misrepresentations made during the negotiation of the purchase agreements. After these underlying suits were brought, the master developer tendered its defense to its liability insurer, who denied coverage under the insurance policies and refused to defend the lawsuits. We affirmed summary judgment in favor of the insured, reasoning that because the insurance contract bound the insurer to pay for sums the insured becomes "legally obligated to pay as damages," and the underlying suits arose out of a contract, there was no potential for coverage, even though the complaints also asserted tort causes of action:
 
 
 8
 In the present case, the underlying lawsuits alleged claims based on breach of contract, negligent and intentional misrepresentation, and nondisclosure. Liability for all of these claims depends upon the existence of the underlying purchase agreements because without the purchasing agreements, Stanford would not have a duty of care towards the claimants. The liability in the underlying lawsuits is therefore purely contractual and not covered under the insurance policies.
 
 
 9
 Stanford Ranch, 89 F.3d at 625.
 
 
 10
 The Government's claims all arise out of the underlying contract and subcontract for work performed at the JACADS facility. Because both Aetna's and Travelers' contracts bind them to pay only for sums the insured becomes "legally obligated to pay as damages," there is no potential for coverage under HDCC's policies, and Aetna and Travelers do not have a duty to defend HDCC against the Government's charges.
 
 
 11
 Because resolution of this question is dispositive of the appeal, we need not reach any of the numerous other issues raised by insurers including the question of whether the letters and subpoena constituted a "suit" under the language of the insurance policies.
 
 
 12
 Consequently, we REVERSE the district court's summary judgment in favor of HDCC and REMAND with instructions to enter judgment in favor of Aetna and Travelers.
 
 
 
 *
 this disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3